# CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY *v.* RANKIN.

## ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 59. Argued November 5, 1915.—Decided May 22, 1916.

Where the state court has treated the instrument involved as properly in evidence and has undertaken to determine its validity and effect, this court need not consider mooted questions of pleading as to whether such instrument was properly before the court.

Rights and liabilities of parties to an interstate shipment by rail depend upon Acts of Congress, the bill of lading, and common-law principles as accepted and applied in Federal tribunals.

The interpretation and effect of a bill of lading of an interstate shipment may present a Federal question even though there is not affirmative proof that the carrier has filed tariff schedules in compliance with the Act to Regulate Commerce.

It will not be presumed, in absence of affirmative proof to the contrary, that an interstate carrier is conducting its affairs in violation of law. The presumption that all things required by law are rightly done applies unless the circumstances of the case overturn it.

Where a carrier by rail offers rates for interstate shipments fairly based upon valuation, it may limit its liability by special contract.

Recitals in a bill of lading, signed by both carrier and shipper, that lawful alternate rates based on valuations were offered, constitute admissions by the shipper and *prima facie* evidence of choice, and cast on the shipper the burden of proof to contradict his own admissions.

THE facts, which involve the construction of the Act to Regulate Commerce and the Carmack Amendment thereto, as applied to a shipment of cattle under a bill of lading containing stipulations for limited liability, are stated in the opinion.

*Mr. James J. Lynch,* with whom *Mr. Michael M. Allison, Mr. Isaac G. Phillips* and *Mr. Edward Colston* were on the brief, for plaintiff in error.

*Mr. W. B. Miller* and *Mr. Charles C. Fox* for defendant in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

Defendants in error, experienced shippers, on November 6, 1911, delivered to plaintiff railway at Danville, Kentucky, a car of mules, nineteen of which they owned, for transportation to Atlanta, Georgia. They signed and accepted a through bill of lading, the pertinent portions of which follow:

"*Contract for Limited Liability in the Transportation of Live Stock at Reduced Rates.*"

"3. Limit of value. That this agreement is subject to the following terms and conditions, which the said shipper accepts as just and reasonable, and which he admits having read and having had explained to him by the agent of the said carrier, viz:

That the published freight rates on live stock of said carrier are, in all cases, based on the following maximum calculations, which are as high as the profit in the freight rates will admit of the carrier assuming responsibility for:

. . .

Horses or Mules, not exceeding $75.00 each

. . .

That the tariff regulations of said carrier provide that for every increase of one hundred per cent, or fraction thereof, in the above valuations, there shall be an increase of fifty per cent in the freight rate; and That the said shipper in order to avail himself of said published freight rates, agrees that said carrier shall not, in any case of loss

or damage to said live stock, be liable for any sum in excess of the actual value of said stock at the place and date of shipment, nor for any amount in excess of the values stated above, which are hereby agreed to be not less than the just and true values of the animals, unless an additional amount is herein stated and paid for."

"4. Guaranteed freight rate. That the rate of freight guaranteed by said carrier, in view of the above stipulated valuations is $—— per —— from —— —— to —— —— and that said shipper accepts this rate of freight, and agrees to pay same at destination in connection with the charges advanced by said carrier, as indicated above, and any other legitimate charges which said carrier may advance for account of said shipper between point of shipment and destination for feed, water, etc."

A wreck occurred at Dayton, Tennessee; some of the animals were killed; others were injured and afterwards sold by plaintiff in error; and shippers brought this suit in the Circuit Court, Hamilton County, Tennessee, to recover $4,750—$250 per head.

The declaration contains two counts. The first—a common law count on a general contract of affreightment—alleges delivery with agreement to pay full freight charges and that the carrier accepted and agreed to transport safely but failed so to do. The second sets up execution and delivery of the bill of lading annexed as an exhibit, but declares shippers knew nothing of the limited liability provision therein; and further "that the whole of said paper, and especially the $75 limitation, is void and of no effect and is not operative or binding on them or either of them," because (1) executed in Kentucky, under whose laws it is void, (2) unreasonable and unjust, (3) no other contract of transportation was offered and shippers were not aware that the transportation was to take place at reduced rates and under stipulations for limited liability, (4) there was no consideration, (5) the

parties were not on equal terms. It also denounces as untrue statements in clause 3 of the bill concerning published freight rates and tariff regulations.

The railway filed nine pleas, two general—"not guilty" and "that it did not breach the contract of carriage" as alleged—and seven special ones. Among other things, the company avers in the latter: That it had duly filed with the Interstate Commerce Commission and had published and kept open for inspection schedules of joint rates between Danville, Kentucky, and Atlanta; they contained classifications of freight in force and stated separately all terminal and other charges and provided that carload rates upon horses and mules where valued not above $75 each should be $95 per car and for every increase of one hundred per cent. or fraction thereof there should be an increase of fifty per cent. in rate; plaintiffs knew the company's freight rate was based upon specified values and that it stood ready to transport at increased valuation and rate, and, knowing these facts, they declared the value specified and thereby obtained the cheaper rate of $95 per car. That the receipt or bill of lading duly signed by shippers fixes a maximum value; contains definite recitals (set out above) in respect of rates, etc., and "with all the provisions thereof, is valid and binding upon the plaintiffs and the defendant when applied to interstate shipments which are governed by the Acts of Congress of February 4, 1887, and June 29, 1906, and defendant pleads and relies upon the same as a complete bar to any recovery (in excess of $75.00) for such mules as were actually killed and such ones as were actually damaged to the amount of $75.00."

Issue being joined the cause was tried to a jury. D. F. Rankin, testifying for himself, declared the mules were worth from $230 to $240 each; described the circumstances surrounding shipment, identified exhibited bill of lading as signed and accepted by him but stated he did not read

it and nothing was said about rates and that he was not aware of the $75 limitation; admitted he had shipped stock over same route before, paying $95 per car; and asserted he had seen no printed tariff rates from Danville to Atlanta. The bill so identified was treated through-out the trial as properly in evidence; but no duly filed and applicable rate schedules were presented, nor did the railway introduce any evidence to support its special pleas.

The trial judge held:

The one controlling point in this case is as to whether or not there is a presumption in favor of the defendant's compliance with the law whereby it seeks by its action to escape from liability."

"There is no doubt in the mind of the Court but that if the railroad were charged with a violation of the provisions of the Interstate Commerce Act, a presumption in favor of its compliance would arise; but where the railroad, as in this case sets up, as a matter of defense, its compliance with the provisions of that Act, the Court is of the opinion that there is no presumption in its favor and that the burden of proof is on the defendant to show a substantial compliance with the provisions of the Act."

"It therefore follows that under the facts in this case, the undisputed facts and the decisions of our courts on this subject, that the court is of the opinion that the contract in this case is invalid and the question goes to the jury as to the negligence of the defendant on this shipment of stock."

And he charged the jury:

"If you find from the proof in this case that the plaintiff did deliver in good condition 19 mules to the defendant to be transported to Atlanta, Ga., and that there was an accident, a collision on the railroad, then the burden is upon the Railway Company to show that it has not been guilty of any negligence.

'If the defendant company shows you by the greater weight or the preponderance of the evidence its freedom from negligence, then the plaintiff is not entitled to recover.

"If you reach the conclusion that the plaintiff has made out his case and is entitled to recover for the value of the 19 mules, then he would be entitled to recover the value of the mules at the place of their destination, in this case, Atlanta, Georgia, according to their value, at the time they would have been delivered but for the negligence of the carrier, less whatever transportation charges there would have been on this car of stock.

"It is also in the discretion of the jury to award interest on any recovery from the time of the loss up to the present time."

. . . "Negligence is the want or lack of exercise of that degree of care which the particular circumstances demands. In this case the carrier is held to the highest degree of care for the safe transportation of the animals."

Judgment upon a verdict for $4,180—$220 per head— and $328.82 interest, was affirmed by the Court of Civil Appeals, and the Supreme Court approved this action without opinion.

The Court of Civil Appeals *inter alia* declared:

"It hardly appears debatable to us, that it was incumbent upon the railroad company, in this case, in the present state of the pleadings, to show by proof that it had met the requirements of the Interstate Commerce Act, and this burden it failed to carry, and having failed to do so it cannot rely upon presumption.

"Having reached this conclusion, it remains to be determined what are the rights and liabilities of these parties, under the contract of carriage in this case. There being nothing in the record to show that the rate of freight charged by the company was approved and authorized by the Interstate Commerce Commission, we must determine the rights of these parties upon the theory that no

such rate was ever filed with the Commission, or approved or authorized by it, and that the rate and contract made in this case was without the authority and outside of the act of Congress, invoked by this defendant; or, 'in other words, so far as the Interstate Commerce Act is concerned, this railroad company has made the contract in violation of its provisions. . . .

"There is no proof that the railroad company had any other rate than the one charged plaintiffs for this shipment between Danville, Ky., and Atlanta, Georgia. There is no proof that it offered to plaintiffs, at the time it issued to them its bill of lading, a contract with unlimited liability or, in other words, a common law liability. . . .

" . . . If the company had any other rate than the one it agreed for the transportation of this freight, it did not disclose that fact to the shipper nor did it have any rate whatever posted in, or about, its office. If it had a shipping contract with unlimited liability it did not choose between the two, and, from the undisputed facts developed in this record, it is clear to our minds this contract is void and the limited liability clause therein cannot be relied upon by the company as a bar to the recovery of full value of each animal shipped. If, however, the defendant had shown, by proof, that the rate charged by it for this freight had been filed with and approved by the Interstate Commerce Commission, and that it had posted the rate as required by the act of Congress, then a rate of freight based upon the valuation fixed in the bill of lading would have limited plaintiffs' right to recover to the value fixed in the contract."

Plaintiff in error maintains, first, that not having been negligent it is not liable for any sum; and, second, that in any event it is protected by a valid limitation in the bill of lading.

Counsel concede liability of a common carrier under the long recognized common law rule not only for negligence

but also as an insurer and that unless the Carmack Amendment (copied in margin) [1] has changed this rule the railway is responsible for damages not exceeding specified value. But they insist that in *Adams Express Co.* v. *Croninger*, 226 U. S. 491, we held this amendment restricts a carrier's liability to loss "caused by it." And, consequently, they say, the trial court erred when it charged: "In this case the carrier is held to the highest degree of care for the safe transportation of the animals."

Construing the Carmack Amendment, we said through Mr. Justice Lurton in the case cited, 226 U. S. pp. 506–507: "The liability thus imposed is limited to 'any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered,' and plainly implies a liability for some default in its common law duty as a common carrier." Properly understood neither this nor any other of our opinions holds that this amendment has changed the common law doctrine theretofore approved by us in respect of a carrier's liability for loss occurring on its own line.

The state courts, treating the bill of lading as properly in evidence, undertook to determine its validity and effect. We need not, therefore, consider the mooted questions of pleading. The shipment being interstate, rights and liabilities of the parties depend upon acts of Congress, the bill

---

[1] "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided*, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. . . ." (Ch. 3591, 34 Stat. 584, 595.)

of lading, and common law rules as accepted and applied in Federal tribunals. *Cleveland & St. Louis Ry.* v. *Dettlebach,* 239 U. S. 588; *Southern Express Co.* v. *Byers,* 240 U. S. 612, and cases cited; *Southern Ry.* v. *Prescott,* 240 U. S. 632.

We cannot assent to the theory apparently adopted below that the interpretation and effect of a bill of lading issued by a railroad in connection with an interstate shipment present no Federal question unless there is affirmative proof showing actual compliance with the Interstate Commerce Act. It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the Federal statutes or become subject to heavy penalties, and in respect of transactions in the ordinary course of business it is entitled to the presumption of right conduct. The law "presumes that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, *omnia presumuntur rite et solemniter esse acta, donec probetur contrarium.*" *Bank of the United States* v. *Dandridge,* 12 Wheat. 64, 69–70; *Knox County* v. *Ninth National Bank,* 147 U. S. 91, 97; *Maricopa & Phoenix R. R.* v. *Arizona,* 156 U. S. 347, 351; *Sun Publishing Assn.* v. *Moore,* 183 U. S. 642, 649.

Under our former opinions the settled doctrine is that where alternate rates fairly based upon valuation are offered a railroad may limit its liability by special contract. *Pierce Co.* v. *Wells, Fargo & Co.,* 236 U. S. 278, 283.

The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of such a limitation and relief from full liability. And as no interstate rates are lawful unless duly filed with the Commission, it may become necessary for the carrier to prove its

schedules in order to make out the requisite choice. But where a bill of lading, signed by both parties, recites that lawful alternate rates based on specified values were offered, such recitals constitute admissions by the shipper and sufficient *prima facie* evidence of choice. If in such a case the shipper wishes to contradict his own admissions, the burden of proof is upon him. *York Co.* v. *Central R. R.*, 3 Wall. 107, 113; *The Delaware*, 14 Wall. 579, 601; *Hart* v. *Pennsylvania Railroad*, 112 U. S. 331, 337; *Cau* v. *Texas & Pacific Ry.*, 194 U. S. 427, 431; *Squire* v. *New York Central R. R.*, 98 Massachusetts, 239, 248; *Wabash R. R.* v. *Curtis*, 134 Ill. App. 409, 412; Hutchinson on Carriers, 3d ed., § 475.

The bill of lading in question is plainly entitled "Contract for Limited Liability in the Transportation of Live Stock at Reduced Rates" and contains the conspicuous provisions concerning published rates, tariff regulations, choice offered the shipper and limit upon the carrier's liability, etc., above set out. In view of these recitals and admissions, the limitation of liability must be treated as *prima facie* valid, and, consequently, the trial court erred in holding it void as a matter of law and permitting a recovery for full value of the animals.

The judgment below is reversed and the cause remanded to the Supreme Court of Tennessee for further proceedings not inconsistent with this opinion.

*Reversed.*