JOSEPH L. BERS and AARON BERS, Doing Business under the Firm Name and Style of E. BERS & COMPANY, Appellants, *v.* THE ERIE RAILROAD COMPANY, Respondent.

First Department, January 26, 1917.

Carrier — interstate commerce — uniform bill of lading construed — clause exempting carrier from liability for freight in cars on sidings — exemption applies to railroad sidings as well as those privately owned — "siding" defined.

The clause of the uniform bill of lading used in interstate commerce which provides in substance that property destined to or taken from a station at which there is no regularly appointed agent shall be entirely at the risk of the owner after unloaded from cars or vessels, or until loaded

into cars or vessels and when received from or delivered on "private or other sidings" shall be at owner's risk until the cars are attached to and until after they are detached from trains, deals with two matters; *first,* with freight after it is unloaded from cars or vessels and, *second,* with freight after it is loaded into cars or vessels.

As to the latter risk, the provision should be construed to read: "Property * * * when received from or delivered on *private or other sidings,* wharves or landing shall be at owner's risk until the cars are attached to and after they are detached from trains."

Said provison that the freight shall be at owner's risk does not relate solely to freight loaded upon private sidings, but also to freight which is loaded upon sidings owned by the carrier, and hence where freight which had been loaded into cars standing on the carrier's siding was stolen during the night time before any attempt was made to move the same by attaching the car to a train, it is not liable as the freight was at the owner's risk.

An additional track placed parallel to the main tracks of the carrier and used for making up and unmaking trains is a "siding," although it was closed at each end by bumpers and connected with the main track by two intervening switches.

DAVIS and McLAUGHLIN, JJ., dissented.

APPEAL by the plaintiffs, Joseph L. Bers and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 3d day of June, 1916, upon a dismissal of the complaint by direction of the court at the close of the case.

*Frederick Zorn,* for the appellants.

*J. Howland Auchincloss,* for the respondent.

SCOTT, J.:

The action is against a common carrier for damages for the loss of merchandise delivered, or alleged to have been delivered, to defendant at Passaic, N. J., for transportation to New York city. The only question which is necessary to discuss is as to the construction and applicability to the facts proven of a certain clause in the bill of lading issued by defendant. The merchandise was loaded by the shipper, L. Chirichello & Sons, upon a car belonging to defendant which had been placed for the purpose of loading upon a siding in front of the shipper's warehouse. The character of this siding bears an important part in the consideration of the question at issue. It was located wholly upon defendant's right of way and had

been constructed or leased to and was maintained by defendant. It ran parallel with the main tracks and was about one mile in length, being closed at each end by a bulkhead or bumper. It was connected with the main track by two switches. Along this siding and adjacent thereto were warehouses used by firms or corporations having frequent occasion to ship or receive freight over defendant's road. In front of the warehouse of L. Chirichello & Sons and between it and the siding was a loading platform, which was the property of said firm. About 140 feet west of this warehouse was the freight house of defendant. The car upon which the goods were loaded had been placed by defendant on the siding immediately in front of the shipper's warehouse on the morning of December 14, 1914, and its loading by the shipper had been concluded at about half-past three on the afternoon of the same day. The shipper then made out a bill of lading and took it to the freight house where defendant's representative signed it, and sent a man to seal the car. This was about five o'clock in the afternoon. The seal was the ordinary contrivance of a wire and a lead disk. The car remained standing on the siding throughout the night and was still there at seven o'clock the next morning not having been, up to that time, attached to any train. Shortly before seven o'clock it was discovered that the car had been broken open during the night, and a portion of the merchandise stolen. It is for this loss that plaintiffs sue.

The bill of lading prepared by the shipper and signed by defendant, and which evidenced the contract of shipment, was a uniform bill of lading, forming a part of the freight specifications and tariff schedules filed by defendant with the Interstate Commerce Commission, and was on file and in force at the time of the transaction above referred to, and its terms and conditions determined the rights and obligations of the parties. (See *Seibert* v. *Erie R. R. Co.*, N. Y. L. J., April 6, 1915, not officially reported.) The consideration for transportation under said uniform bill of lading was at a rate ten per cent lower than the defendant's "common law liability" rate.

Among the conditions indorsed upon the bill of lading and forming a part of the contract of shipment was the following:

"Property destined to or taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landing shall be at owner's risk until the cars are attached to and after they are detached from trains."

The defendant bases its defense upon this clause and the judgment appealed from upholds its contention. It is to be observed that the clause in question deals with two subjects. It has to do first with freight *after* unloading from cars and vessels and *until* loaded into cars or vessels, that is, with property not, at the time of loss, loaded upon or into a car or vessel. With this portion of the clause we have no present concern. The second subject dealt with is that of property contained in loaded cars or vessels. It is this part of the clause which we are now called upon to construe. Eliminating the provision as to unloaded freight the clause would read: "Property * * * when received from or delivered on *private or other sidings*, wharves or landing shall be at owner's risk until the cars are attached to and after they are detached from trains." The car upon which the property sued for was contained had not been, up to the time of the loss, attached to a train, and the question in the case is, therefore, reduced to whether or not the piece of track upon which the car stood at the time of the loss was or was not a "private or other siding."

That it was a siding we think admits of no doubt. It is an additional track placed at the side of the main track used for the storage of cars and for making up and unmaking trains. Some of the dictionary definitions speak of a siding as connected with the main track by switches at one or both ends, but that it should be connected in this particular manner is manifestly not determinative of its character. That is fixed by its location, its uses and the fact that it is connected with the main track by switches.

A more interesting question is whether or not it was "a private or other" siding. It was not, strictly speaking, a private siding either in ownership or use. Is it an "other siding?"

The plaintiffs contend that in determining what is contemplated by these words we must apply the rule *ejusdem generis*, and determine that the words "other siding" meant a siding in the nature of a private siding. Just what kind of a siding would be embraced in the words "other siding" under this rule of construction is not apparent. As we consider a more reasonable construction of the clause is to hold that the purpose of using the words "other siding" was to make the condition comprehensive so as to apply to all sidings whether public or private. This was the view taken by the Court of Errors and Appeals of New Jersey in *Standard Combed Thread Company* v. *Penn. R. R. Co.* (88 N. J. Law, 257), in which the court, passing upon the identical clause in question here, said: "It was not a private siding. The Trial Court held the view that a public siding was not in the intendment of the clause an ' other ' siding. We do not share this view. If sidings are to be classified into private and other sidings, the other sidings would necessarily be other than private and the logical alternative to ' private ' is ' public.' " It is true that this construction was not necessary to the determination of the case then before the court, and that the expression of opinion above quoted may be classed as *obiter dictum*. Even so, however, it is of value as expressing the views of an important and highly regarded court, and coincides with the conclusion at which we have independently arrived. If we seek for the reason for the condition we are confirmed in the view that it applies to all sidings, both public and private. The object and purpose of the condition is to define when the carrier's liability for lost property loaded on cars shall begin and shall terminate. The meaning and intent of the stipulation which is a term of the contract of carriage, is that liability for such property shall begin when the car is removed from the siding and attached to a train, and shall terminate when it is detached from the train and placed on a siding.

We are, therefore, of the opinion that the judgment appealed from was right, and it is consequently affirmed, with costs to the respondent.

CLARKE, P. J., and PAGE, J., concurred; DAVIS and McLAUGHLIN, JJ., dissented.

DAVIS, J. (dissenting):

The court below dismissed the complaint herein at the close of the whole case, and the appeal is from the judgment dismissing the complaint. In thus disposing of the case I think the learned court erred, and that there should be a reversal of this judgment.

The action is brought to recover damages for the loss of part of a shipment of metals delivered to the defendant railway at Passaic, N. J., by L. Chirichello & Sons for transportation to the plaintiffs at New York city. The defendant has a freight house or station at Passaic, and between this house and the main track lie two pieces of track which are connected with each other and with the defendant's main track by two sets of switches, allowing freight cars to be placed either on the track nearest the freight house for loading or unloading at the freight house, or, on the other track, for the receipt and delivery of freight at certain private warehouses lying along and adjacent to the defendant's track and extending from defendant's freight house in a northerly and southerly direction. The latter track is a mile long, and has a bulkhead bumping block at each end. The defendant is the lessee of the land and tracks and has exclusive control of them. The warehouse of Chirichello & Sons is located along this latter track at a point 145 feet to the south of the freight house itself. In front of the warehouse was a platform belonging to Chirichello & Sons running out toward the track. On the morning of December 14, 1914, a freight car, referred to as Erie 104504, was switched by the defendant onto the track immediately in front of Chirichello & Sons' platform for the purpose of being loaded. Certain metals were then placed in the car by Chirichello & Sons from the platform on the same day. The loading was completed at about half-past three in the afternoon, and a bill of lading was made out and taken to the freight house near by, where the defendant's agent signed it between four and four-thirty on the same day. After signing the bill of lading the agent directed an employee to seal the car doors, and the doors were accordingly sealed with the Passaic seal at about five P. M. A little before seven on the morning of December fifteenth it was discovered that the car door on the

side facing Chirichello's building was open, the seal broken, and barrels containing the metals were lying inside the car with their burlap heads opened and the metal scattered on the floor. The defendant weighed the metals and found the weight to be much less than the original weights. After this discovery the defendant attached the car to a train and transported the remaining metals to New York and delivered them to the plaintiff. It appears quite clearly that the metals were stolen from the car while it was still upon the track where it had been loaded and that the car was not attached to a train until about eight-thirty the next morning, which was after the theft of the metals had been committed. It having been shown that the theft was committed before the car was attached to a train, the defendant asked for and obtained a dismissal of the complaint on the ground that under the bill of lading the defendant is not liable for this loss occurring while the car was on a siding and before it had been attached to a train. The shipment was received by the defendant and transported to New York subject to the conditions of the uniform bill of lading of a standard form on file with the Interstate Commerce Commission. Part of section 5 of the conditions indorsed on the bill of lading provided as follows: "Property destined to or taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landing shall be at owner's risk until the cars are attached to and after they are detached from trains."

It is practically conceded that if the theft of the property had been committed after the car had been attached to a train the defendant would be liable. The principal question to be decided is whether under the bill of lading and under the evidence in the case the property stolen was at the owner's risk because the car in question had not been attached to a train before the theft was committed. In the view I take of the evidence it is altogether immaterial whether the car was or was not attached to a train before the larceny of the property. The track upon which the car was loaded was neither a "pri-

vate or other siding " within the meaning of the bill of lading. It was merely a part of defendant's terminal and freight yard. It was so placed with reference to the main tracks that it could be used for general switching purposes, car storage, or for the receipt and delivery of freight to the seventeen various business concerns adjacent to the track in the immediate vicinity of the freight house. In determining the rights and liabilities of the parties under this interstate shipment we must be governed by the acts of Congress, bills of lading and common-law rules as accepted and applied in Federal tribunals. (*Cincinnati & Texas Pac. Ry.* v. *Rankin,* 241 U. S. 319.) The track in question is not a private siding within the meaning of the bill of lading. In railroad law as interpreted by Federal tribunals private sidings are those "outside the carrier's right of way, yard and terminals, and of which the railroad does not own either the rails, ties, roadbed, or right of way." (Conference Ruling 121 of the Interstate Commerce Commission.) In the case of *Associated Jobbers of Los Angeles* v. *A., T. & S. F. Ry. Co.* (18 I. C. C. 310, 316) the Commission refers to a " private " siding as " one not owned by the railroad and which is not a part of the railroad's own terminals." In the case of *N. Y. C. & H. R. R. R. Co.* v. *General El. Co.* (219 N. Y. 227) Judge CARDOZO uses the following language: " Private sidings, owned and maintained by shippers, do not constitute the right of way, and the use that the carrier may be compelled to make of them is subordinate and incidental to the fulfillment of its primary function of carriage along its route." (See, also, *Los Angeles Switching Case,* 234 U. S. 294.) Nor is the track in question to be included in the term " other sidings." These words do not comprehend within their meaning *all* sidings other than private sidings; for instance, they would not include a siding directly in front of defendant's freight station in charge of an agent. They doubtless refer to those sidings which, like private sidings, are not owned and controlled by the railroad. They would include a public siding, since a public siding cannot be said to be owned by the railway.

Thus construed this bill of lading absolves the defendant from liability for loss of property at its own station, wharf or landing, where it has no regularly appointed agent after the

property has been unloaded from cars or vessels, and, in the case of shipments at those places, until loaded into cars or vessels; and when the property is received from or delivered at wharves and landings not owned by the defendant, it is not liable for loss until the cars are attached to a train, and in case of delivery it is not liable after they are detached therefrom. And, finally, where the property is placed in cars on private side tracks, or on other tracks over which the railroad has no control, the property is at the owner's risk until the car is attached to a train, or, in case of delivery, the defendant is not liable after the car is detached therefrom.

Even if we deemed defendant's track to be an industrial spur or siding because it serves more or less exclusively several private industries adjacent to it, it is not a "private or other siding" within the meaning of the bill of lading. Referring to industrial spurs and sidings the Interstate Commerce Commission has said in the case of *Associated Jobbers of Los Angeles* v. *A., T. & S. F. Ry. Co.* (18 I. C. C. 312): "* * * These industry spur tracks are not private, in that the carrier may use them for purposes of its own — as for storage of cars, as leads to other industries and sometimes for public delivery. * * * Each of such spurs is in a real sense a railroad terminal at which the carrier receives and delivers freight — a special, and generally in practice an exclusive, railroad depot for the carload freight of a particular shipper. * * * We are fully convinced * * * that they are portions of the terminal facilities of the carrier with whose lines they connect, and, together with the team tracks and other yards, form the terminal facilities of these carriers." The Commission accordingly found that the contract of carriage was not performed until there was a delivery by the carrier at the industry on the spur track. (*Tap Line Cases*, 234 U. S. 1, 25.)

The obvious fact appearing in the evidence in this case is that the track upon which the car in question was loaded was in no sense a private or public track, but simply a track within the limits of defendant's freight station, entirely subject to defendant's control, and used for the mutual convenience of the railroad and shippers for the receipt and delivery of freight, and capable of being used for other railroad purposes

by the defendant.    It was merely an extension of defendant's freight depot, at which it received the property in question for transportation and for the loss of which it could be held liable irrespective of whether or not it was attached to a train.

The judgment should be reversed and a new trial granted.

MCLAUGHLIN, J., concurred.

Judgment affirmed, with costs.