## JOHN LYSAGHT, Limited, v. LEHIGH VALLEY R. CO.

(District Court, S. D. New York. December 20, 1918.)

1. CARRIERS ⬦177(3)—LIABILITY OF INITIAL CARRIER—INTERSTATE COMMERCE LAW—"EXISTING LAW."

In Interstate Commerce Act, § 20, as amended by Act June 29, 1906, § 7 (Comp. St. 1916, § 8604a), regulating liability of initial carriers, the proviso that nothing in the section shall deprive the shipper "of any remedy or right of action which he has under the existing law," means the common law as understood in the federal courts, and excludes changes made by state statutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Existing Law.]

2. CARRIERS ⬦177(4)—LIABILITY TO SHIPPERS—INTERSTATE COMMERCE LAW.

Under Interstate Commerce Act, § 20, as amended by Act June 29, 1906, § 7 (Comp. St. 1916, § 8604aa), the liability of a connecting or terminal carrier for property lost or damaged while in its custody is the same as that of the initial carrier.

3. CARRIERS ⬦119—LOSS OF PROPERTY—DEFENSES—"ACT OF GOD."

Loss or damage to property in course of transportation through explosion of war munitions, also in transit, cannot be considered in a legal sense an "act of God."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of God.]

4. CARRIERS ⬦177(3)—LIABILITY OF INITIAL CARRIER—INTERSTATE COMMERCE LAW.

Interstate Commerce Act, § 20, as amended by Act June 29, 1906, § 7 (Comp. St. 1916, § 8604a), providing that a carrier receiving property for interstate transportation shall be liable for "any loss, damage or injury to such property caused by it," is not a limitation of the carrier's preexisting common-law liability.

5. CARRIERS ⬦115—LIABILITY FOR LOSS OF PROPERTY—EXPLOSION OF MUNITIONS.

Compliance by a carrier in the carriage of war munitions with the requirements of Criminal Code, §§ 232–235 (Comp. St. 1916, §§ 10402–10405), does not affect its civil liability in respect to loss or damage to property of other shippers through an explosion of such munitions.

At Law. Action by John Lysaght, Limited, against the Lehigh Valley Railroad Company. On demurrer to pleas. Demurrer sustained.

Demurrer to three pleas interposed to a complaint.

The complaint alleged: That on June 17, and June 22, 1916, the plaintiff caused to be delivered to the receiver of the Missouri, Kansas & Texas Rail-

way two carloads of spelters to be transferred from the state of Kansas to the state of New York for export, consigned to the Iola Zinc Company, New York, and that for each carload the Missouri, Kansas & Texas Railway issued a bill of lading in standard form as approved by the Interstate Commerce Commission. That the defendant as connecting carrier received these two carloads for the completion of the transportation through the states of New York, Pennsylvania, and New Jersey, and to the city of New York. That thereafter, and on the 30th day of July, 1916, while in possession of the defendant, and at the port of New York, the carloads were destroyed by fire, to the damage of the plaintiff in the sum of $15,544.23.

The second cause of action repeats the allegations of the first, and adds that the loss of the spelters was due to the negligence of the defendant. This cause of action is not the subject of the present controversy.

The defendant pleaded, for a first plea: That the spelters were destroyed as the natural result of certain explosives and munitions of war, in the course of transportation in interstate and foreign commerce as a necessary incident to the great European war, and that they exploded without fault of the defendant, for reasons beyond its control. That such explosion was a great public calamity, of which both the plaintiff and the defendant were innocent victims, and for which the defendant was in no wise responsible.

The second plea alleges: That the defendant and its connecting carriers were common carriers of freight and passengers in interstate commerce, and as such subject to the Interstate Commerce Act (Act Feb. 4, 1887, c. 104. 24 Stat. 379). That the defendant and its connecting carriers duly published as required by law their rates, charges, bill of lading provisions, and rules and regulations for the transportation of freight, including explosives and munitions of war. That on July 30, 1916, a large amount of explosives and munitions of war were in the possession of the defendant at Jersey City, N. J., in the course of transportation in interstate foreign commerce, and that the spelters mentioned in the complaint were destroyed without any fault or negligence of the defendant, and as the proximate and natural result of the explosion on the date in question of certain of the aforesaid explosives and munitions of war. That the defendant, in the course of its handling and transportation, and while holding the aforesaid explosives and munitions of war, had fully complied with all the requirements of the act of Congress and the rules of the Interstate Commerce Commission applicable, as well as with its own tariffs, classifications, and bill of lading provisions for the transporting of such explosives and munitions of war.

The third plea alleges the same facts as the second, and in addition that the damage resulted from certain explosives and munitions of war, which were not in the possession or under the control of the defendant, but were on barges lying in the waters of New York Bay in the vicinity of defendant's terminal at Jersey City, N. J., which were wholly out of the control of the defendant.

The defendant by the three pleas raises the following points: First. That the "Black Tom explosion," which did immense damage in the neighborhood, was a great public calamity, for which the defendant should not be charged, but which should be regarded as an exception to its liability as a common carrier. That the conventional rule governing carrier's liability will not withstand the results of inquiry into the sources of such liability as found in the history of the subject, and that a carrier should not in law be liable therefor. Second. That the whole subject is regulated by the Interstate Commerce Act and those sections of the Criminal Code, §§ 232–235 (Act March 4, 1909, c. 321, 35 Stat. 1134 [Comp. St. 1916, §§ 10402–10405]), which regulate the carriage of explosives by common carrier. That under this legislation Congress has provided the precautions which carriers shall exercise, and which, if they do, shall exempt them from responsibility in the carriage of explosives. That, furthermore, the liability of a common carrier is only for damages caused by it, and does not include any liability for explosions in which neither it nor its servants can be shown to have any part. Third. That, if the explosion was due to materials not in possession of the defendant, it is not responsible for the same, as in no aspect can it be said to be caused by the carrier itself.

W. K. Post, of New York City, for plaintiff.

Lindley M. Garrison and Charles A. Boston, both of New York City, for defendant.

LEARNED HAND, District Judge (after stating the facts as above). [1, 2] This case depends directly upon the Carmack Amendment of the Interstate Commerce Law, which the Supreme Court has many times declared completely to regulate all the liabilities of common carriers engaged in interstate commerce. Adams Express Co. v. Croninger, 226 U. S. 491, 505, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Erie R. R. Co. v. New York, 233 U. S. 671, 681, 34 Sup. Ct. 756, 58 L. Ed. 1149, 52 L. R. A. (N. S.) 266, Ann. Cas. 1915D, 138; N. Y. & Norfolk R. R. Co. v. Peninsula Exchange, 240 U. S. 34, 36 Sup. Ct. 230, 60 L. Ed. 511, L. R. A. 1917A, 193; Southern Express Co. v. Byers, 240 U. S. 612, 614, 36 Sup. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197; Southern Railway v. Prescott, 240 U. S. 632, 639, 36 Sup. Ct. 469, 60 L. Ed. 836; Georgia, Florida, etc., Ry. v. Blish Milling Co., 241 U. S. 190, 194, 36 Sup. Ct. 541, 60 L. Ed. 948; Cincinnati, etc., Ry. v. Rankin, 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265; Atchison, etc., Ry. v. Harold, 241 U. S. 371, 378, 36 Sup. Ct. 665, 60 L. Ed. 1050. The Interstate Commerce Law, § 20, as now amended (Act Feb. 4, 1887, c. 104, 24 Stat. 386, as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [Comp. St. 1916, §§ 8604a, 8604aa]), provides that an initial carrier shall be liable for all loss or damage "caused by it," but that the section as a whole shall not affect "any remedy or right of action" which the shipper shall have "under the existing law." The phrase "existing law" means existing common law as understood in the federal courts, and excludes changes effected by state statutes. Adams Express Co. v. Croninger, supra, 226 U. S. 504, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Southern Express Co. v. Byers, supra, 240 U. S. 614, 36 Sup. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197; Southern Railway Co. v. Prescott, supra, 240 U. S. 639, 36 Sup. Ct. 469, 60 L. Ed. 836. A connecting or terminal carrier's liability is subject to the same rules as the initial carrier's. Georgia, etc., Ry. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948.

[3] The question, therefore, becomes whether the "federal law" as so understood excuses the defendant in such circumstances as the pleas allege. That the explosion of the substances carried by the defendant can be regarded as in any sense an "act of God," cannot be supported, as that phrase has always been understood. They were inherently unstable compounds, not combined by spontaneous processes of nature, but under human direction, and from no point of view could the release of energy attendant upon their resumption of stable chemical conditions fall within the definition of that phrase. Even though the conventional limits of an "act of God" be vague and irrational, and though there may be still some latitude for interpretation which did not seek to make the definition turn upon the degree

of violence of the elements, there is a clear difference between the acts of the elements which all must endure, and the results of human contrivance like this. If it be urged that the affinity of the dissociated atoms of an unstable chemical compound be a force of nature, the fact is true; but it is quite irrelevant, for the laws of nature attend every action of man, including even the operation of his consciousness. The distinction was devised, not for chemists, but for common men, and must be read in their terms. So viewed, the elements had nothing to do with the calamity, but only the hand of man. Nor can the damage be attributed to any "vice" of the plaintiff's goods, however that word be construed. They were injured by the "vice" of other goods in the carrier's or others' custody, and not by their own.

[4] If, then, the common expressions of carrier's liability be accepted, there is no escape here for the defendant, and so it insists that these are only loose and ill-founded formulas, which will not endure historical analysis. The answer is, I think, to be found, not there, but in the definite purposes of the statute which covers the whole subject. There cannot be any doubt, from the latest expression of the Supreme Court (Cincinnati, etc., Ry. Co. v. Rankin, 241 U. S. 319, 326, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265), that section 20 was intended to adopt the carrier's liability as it was understood at that time, and that the language of Mr. Justice Lurton in Adams Express Co. v. Croninger, 226 U. S. 491, 506, 507, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, is not to be taken as interpreting the phrase "caused by it" as in limitation of any pre-existing liability. He was indeed discussing, not that question, but only whether the language extended the carrier's liabilities as fixed at common law, which he thought it did not, but that rather it implied "a liability for some default in its common-law duty as a common carrier." It may, perhaps, be too much to assert that the proviso of section 20 incorporates unyieldingly the exact status of the federal common law into the statute in its whole concreteness, yet it certainly does affirm in general the liability of carriers so derived as a part of the statute itself. Any radical departure from that law would violate the fair import of the phrase, and if there is to be any such it must be by express act of Congress. So much follows from the scheme of the section, which since 1906 has been obviously molded with an eye to the generally accepted liabilities of carriers as a foundation for the very specific changes prescribed from time to time.

It is, of course, possible to conceive the common law so incorporated to be such only as the courts might after a historical scrutiny accept, leaving them free even for radical modifications in the doctrine as generally expressed when the language first appeared in section 20. But I do not so understand the substance of the matter. Whether ill or well founded historically, the exceptions to a carrier's absolute liability had come to have a classic form, and I do not agree that a nice inquiry into the foundations of the current doctrine was contemplated by the statute. The section incorporated what was generally accepted in the form in which it had become accepted, and ren-

dered irrelevant the conclusions at which historical scholarship might arrive as to its justification. The structure of the system created by the act presupposed the existing law as then understood, and if it bears too heavily on the railroads their only relief is by an application to the Commission or to Congress. The courts have no such powers.

Therefore it seems to me quite beside the mark to engage in the examination which the defendant invites. Moreover, the implicit assumption of its case I do not accept, that justice necessarily lies on its side. I am aware of no long-accepted convention, which usage has made into an axiom of justice, and which throws a loss like this upon the shipper as against the carrier. Each party is quite innocent, and while it may be that the ordinary risks of ownership should fall upon the shipper, it is not apparent to me that the custody of the carrier may not be thought to modify those risks as between the two. The fact seems rather to be that all such a priori considerations are in vacuo, and that the relative rights of the parties may be only settled in the light of the function assigned to the carrier in the economic system of the country. That is a matter so obviously out of the province of a court and within that of Congress, where the conflicting economic interests may exert their mutual political powers, that I need hardly express any opinion upon it, even if I were in any position to do so. Whatever may be the debatable limitations of a carrier's liability still left open within the accepted general formulas, they do not raise any questions here.

[5] Sections 232–235 of the Criminal Code do not concern the regulation of the carrier's civil liability. They are intended to provide against the carriage of explosives generally on passenger vehicles or vessels, and otherwise to impose conditions upon such carriage as the Interstate Commerce Commission shall prescribe. It may be that their violation might entail a civil liability in addition to that imposed at common law, but upon that I need express no opinion. That they serve as a limitation upon the common-law liability is not suggested in the text of the statute, and is not to be inferred from its purpose. It in no sense follows because shipments are lawful, when they conform to the rules, that there is no responsibility inter partes which arises from their possession. The law has always recognized liabilities which do not depend upon any fault, if that be understood to involve a failure to respond to a conventional standard of foresight. The master's responsibility for his servant is, for example, derived from quite another basis. Recently, as in Workmen's Compensation Laws, the same principle has again appeared. Now, it is true that a carrier is obliged to receive the goods upon fixed terms, and cannot escape the liability after once engaging in the business; but there is no implication from this that a law which establishes minimal requirements for their receipt intends to relieve the carrier of any consequences except those arising from its fault, and in any aspect the Interstate Commerce Law contradicts such a broad result.

The third defense adds nothing to the others, since the carrier's liability is not limited to damage arising to goods received, by oth-

er goods in its possession. If it would be a desirable innovation so to prescribe, it would be an innovation nevertheless. More can be said for it than for a similar exception for damage arising from goods within the carrier's possession, but it involves a radical readjustment of what has long been accepted, and it is not for the courts.

None of the pleas is valid in law, and the demurrer will be sustained. As I understand that the defendant does not wish to plead over, no such leave will be granted.

Demurrer sustained.