FREDERICK LEYLAND & CO., Limited, v. HORNBLOWER.

(Circuit Court of Appeals, First Circuit. February 11, 1919.)

No. 1362.

1. SHIPPING ⊗=140—CONTRACTS OF AFFREIGHTMENT—LIMITATION OF LIABILITY.

It is competent for a steamship company as a carrier of goods to limit its liability to a certain amount in case of loss or damage, even as against its own negligence, where the valuation is the basis on which freight is charged and this fact was fully known to the shipper.

2. SHIPPING ⊗=140—BILLS OF LADING—PRESUMPTION OF AGREEMENT TO TERMS.

A provision in a bill of lading limiting liability of the carrier to a certain amount raises a presumption that the shipment was made upon the agreed valuation, and that opportunity was afforded of shipping at a higher valuation by payment of a higher rate.

3. SHIPPING ⊗=140—ACTION FOR DAMAGE TO GOODS—DAMAGES—EFFECT OF INSURANCE.

Under a provision of a bill of lading that the carrier, if liable for loss or damage, should "have the benefit of any insurance effected upon the goods," where a policy on the goods clearly did not cover the risk from which the loss occurred, an arrangement by which the insurer advanced a sum to the insured on a borrowed and loan receipt does not inure to the benefit of the carrier.

4. EVIDENCE ⊗=555—OPINION EVIDENCE—COMPETENCY.

The opinion of an expert, based upon his general knowledge as to the effect of a strain upon a winch after its jaws had been worn, was properly admitted, although he had not examined the winch involved in the case.

5. Evidence ☞123(12)—Res Gestæ—Statements After Event.

Statements of the captain of a steamship with respect to an accident which had previously occurred in the unloading of cargo by stevedores, as to which the captain was charged with no duty, held incompetent as part of the res gestæ as against the shipowner.

In Error to the District Court of the United States for the District of Massachusetts; Clarence Hale, Judge.

Action at law by Henry Hornblower against Frederick Leyland & Co., Limited. Judgment for plaintiff, and defendant brings error. Reversed.

Stephen R. Jones, of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for plaintiff in error.

Harold P. Williams, of Boston, Mass. (Williams & Copeland, of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and ALDRICH, District Judge.

JOHNSON, Circuit Judge. In the court below the plaintiff, a citizen of Massachusetts, recovered judgment for damages to an automobile shipped by him from Liverpool, England, to Boston, Mass., on the defendant's steamer Cestrian.

While the automobile was being raised by a winch from the hold of the steamship at a wharf in Boston on September 30, 1909, and after it had reached the level of the deck, the clutch in the winch became disengaged, and the automobile fell between 30 and 40 feet to the bottom of the hold.

The defendant, a foreign corporation established under the laws of Great Britain, is a common carrier of passengers and freight between the ports of Liverpool, England, and Boston, Mass.

The assignments of error relate to the instructions of the presiding judge as to the effect to be given to a provision in the bill of lading limiting the amount of the liability of the carrier, to the admission of evidence and to the receipt of certain money by the plaintiff from the Boston Insurance Company with whom the plaintiff had insured the automobile.

[1] The provision by which the liability of the carrier is sought to be limited is as follows:

"Not accountable for any goods of whatever description beyond the sum of 20 pounds per package, unless the value be herein expressed and extra freight as may be agreed on paid."

The learned judge of the District Court instructed the jury that this provision was unreasonable and invalid, because forbidden by 27 Stat. 445 (Act Feb. 13, 1893, c. 105, § 1 [Comp. St. § 8029]), known as the "Harter Act."

The plaintiff delivered the automobile to G. W. Sheldon & Co., forwarders in Liverpool, who crated it, attended to its shipment and received a bill of lading from the defendant company containing the above provision. This bill of lading constitutes the contract of car-

riage and the rights of the parties are to be determined by it, in the absence of any testimony that an unfair advantage was taken of the shipper, or that there was fraud practiced upon him, or that he received it under a misapprehension as to its terms, or that it contained provisions which were unjust and unreasonable in view of the common-law obligation resting upon the carrier.

It was decided in Hart v. Pennsylvania R. R., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, that a common carrier may limit its liability for damages occasioned by its negligence by a contract fairly made with the shipper, "agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier." This case has been frequently followed and its doctrine applied in construing limited liability contracts of carriers, in cases which have arisen relating to interstate shipments under the provisions of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379) and the Carmack Amendment to that act (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [Comp. St. §§ 8604a, 8604aa]), and in all of them it has been held that such a provision is only valid where a choice of rates dependent upon value has been afforded the shipper.

In Cincinnati, New Orleans & Texas Pacific Ry. v. Rankin, 241 U S. 319, 327, 36 Sup. Ct. 555, 558 (60 L. Ed. 1022, L. R. A. 1917A, 265), the court said:

"The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of such a limitation and relief from full liability."

In that case both parties signed the bill of lading reciting that lawful, alternate rates, based on specific values, were offered; and it was held that such recitals constituted admissions by the shipper and prima facie evidence of choice. Since the passage of the Harter Act (Comp. St. §§ 8029–8035), limited liability clauses in bills of lading issued by common carriers engaged in transportation of goods between ports of the United States and foreign ports, have been held valid.

In Reid v. American Express Co., 241 U. S. 544, 36 Sup. Ct. 712, 60 L. Ed. 1156, the bill of lading contained the following provision:

"It is also mutually agreed that the value of each package shipped hereunder does not exceed $100, or its equivalent in English currency, on which basis the freight is adjusted, and the carrier's liability shall in no case exceed that sum, unless a value in excess thereof be specially declared and stated herein, and extra freight as may be agreed on paid."

And the court there held that the liability of the carrier was limited to $100, "as stated in the bill of lading" under which the shipment was made.

In Hohl v. Norddeutscher Lloyd, 175 Fed. 544, 99 C. C. A. 166, a case decided in the Second Circuit, in which a writ of certiorari was denied (216 U. S. 621, 30 Sup. Ct. 575, 54 L. Ed. 641), the limited liability provision was:

"Not accountable for any sum exceeding $100 per package for goods of whatever description, nor for any amount in respect of gold, silver, etc., * * *

unless the value of such be herein expressed and freight as may be agreed paid thereon."

The court there held that:

"It is competent for a steamship company as a carrier of goods to limit its liability" to a certain amount "in case of loss, even as against its own negligence," where the valuation "is the basis on which freight is charged, and [this fact] was fully known to the shipper."

In Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033, the court construed the provision to be one of exemption, and not of limitation, so that under it, if lawful, the carrier would be exempted from all liability if the goods lost or damaged, were above the value of $100 per package, but clearly intimated that if the liability of the carrier had been limited to the amount of $100 per package, it would have been sustained.

Counsel for the plaintiff in argument admits the binding force of these decisions, but claims that the contract for valuation must be reasonable and fairly made "and that the shipper shall not be induced to assent to the same under any misapprehension." It is claimed that the automobile was delivered at the office of the steamship company in Liverpool by one Sontag, the plaintiff's chauffeur, who was asked the value of the car at the time of delivery, and said that the original price of the car was a few hundred dollars under $10,000, and that either through design, fraud, error, or mistake the declared valuation was not set forth in the bill of lading, and that the plaintiff had the right to rely upon the rate paid by him as being based upon the value which Sontag had declared. The evidence does not support this claim, however, as Sontag testified in cross-examination that he put the automobile "into the hands of Sheldon & Co.," who were to ship it for the plaintiff, and that they took charge of the shipment; that he had nothing to do with that; and the plaintiff himself testified that he turned the car over to Sontag in Liverpool to take to the shipping agents. There was no evidence that Sontag acted as agent for the shipping agents. The automobile was delivered by Sheldon & Co., as agents of the plaintiff, to the steamship company, and the bill of lading was issued in their names. There was no evidence that fraud was practiced upon them or that they misapprehended the terms of the bill of lading, or that the defendant did not offer them an opportunity of paying a higher rate and placing a higher value upon the automobile and thus increasing the amount of the defendant's liability; nor was there any evidence that the rate was not reduced because of the restricted liability assumed by the defendant.

The only testimony in regard to the rates of the company came from Robert S. Guilford, who testified that he had general charge of the steamship office of the defendant company in Boston; that the bill of lading under which the automobile in question was forwarded was "the regular Leyland line bill of lading which had been in use by the company for the past five or six years; that the company did not publish any schedule of rates, but that its agents had certain memoranda to guide them in quoting rates; that in 1909 the company had no general rate on automobiles shipped from Liverpool to Boston, but that

the rate for their carriage was quoted subject to acceptance and a special contract made; that the general rate of the steamship company, either on east-bound or west-bound freight, was based on cubic feet of space occupied by the shipment or its weight, and also on its valuation.

[2] The plaintiff also claims in argument that the burden of proof is on the defendant to show that the rate charged the plaintiff was based on its minimum valuation of twenty pounds per package. So far as the matter has received any judicial consideration it has been held that a provision similar to that contained in the bill of lading in this case raises a presumption that the shipment was made upon the agreed valuation and that opportunity was afforded of shipping at a higher valuation by the payment of a higher rate, in the absence of evidence to the contrary. This is equivalent to saying that the bill of lading upon its face is prima facie evidence of all the facts that may be fairly and legally inferred from its terms.

In the Hart Case, supra, 112 U. S. at page 337, 5 Sup. Ct. at page 154, 28 L. Ed. 717, the court said:

"It must be presumed, from the terms of the bill of lading and without any evidence on the subject, and especially in the absence of any evidence to the contrary, that, as the rate of freight expressed is stated to be on the condition that the defendant assumes liability to the extent of the agreed valuation named, the rate of freight is graduated by the valuation."

In Adams Express Co. v. Croninger, 226 U. S. 491, 508, 33 Sup. Ct. 148, 153 (57 L. Ed. 314, 44 L. R. A. [N. S.] 257) the court said:

"That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made was based upon a valuation of $50 unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the commission."

In Cincinnati, New Orleans & Texas Pacific Ry. v. Rankin, supra, 241 U. S. at page 328, 36 Sup. Ct. 558, 60 L. Ed. 1022, L. R. A. 1917A, 265, the court said:

"Where a bill of lading, signed by both parties, recites that lawful alternate rates, based on specific values, were offered, such recitals constitute admissions by the shipper and sufficient prima facie evidence of choice."

The presumption that the shipper had knowledge that the rate was based upon the assumed value is strengthened by the fact that the evidence discloses that Sheldon & Co., as forwarders, had been shipping goods over the defendants' line for at least 15 years, and that the bill of lading which was delivered to them by the steamship company in this case was the ordinary bill of lading which had been in use in its present form by the steamship company for 5 or 6 years.

In the absence of proof to the contrary, it may be assumed, under the terms of the bill of lading, that the rate was based upon the agreed valuation, and that, if requested, the defendant would have written into the bill of lading the value given by the forwarders and charged the rate proportionate to that value. While it is true that no actual value was placed upon the automobile, yet by the terms of the bill of lading a value was assumed, and that this assumed value was far be-

low the actual value of the automobile does not alone render the limitation invalid.

It is said by the court in Pierce Co. v. Wells Fargo & Co., 236 U. S. 278, 285, 35 Sup. Ct. 351, 354 (59 L. Ed. 576):

"But it is said, and this fact was the basis of the dissenting opinion in the Circuit Court of Appeals, that there was no valuation at all in this case, and that the disproportion between the actual value of the automobiles shipped —about $15,000—and $50 demonstrates this fact, and it is insisted that what was done was merely an arbitrary and unreasonable limitation in the guise of valuation. This argument overlooks the fact that the legality of the contract does not depend upon a valuation which shall have a relation to the actual worth of the property. None such was attempted in the Neiman-Marcus Case [227 U. S. 469, 33 Sup. Ct. 267, 57 L. Ed. 600], the Croninger Case [226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257], or the Hooker Case [233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593]."

In Hohl v. Norddeutscher Lloyd, supra, 175 Fed. at page 547, 99 C. C. A. at page 169, the court said:

"It is sought to distinguish the case at bar from the Hart Case on the theory that there has been no agreed valuation, but the amount has been fixed arbitrarily by the carrier, without reference to the real value; but in the Hart Case the amount, per horse and per carload, was fixed arbitrarily by the carrier in its general form of live stock bill of lading. The shipper in that case signed the bill of lading, but that circumstance merely made it easier to prove that he was fully informed as to its terms."

In the Hart Case, the court said (112 U. S. at page 337, 5 Sup. Ct. 154, 28 L. Ed. 717):

"As a minor proposition, a distinction is sought to be drawn between a case where a shipper, on requirement, states the value of the property, and a rate of freight is fixed accordingly, and the present case. It is said, that, while in the former case the shipper may be confined to the value he so fixed, in the event of a loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract is not a valuation previously named by the shipper. But we see no sound reason for this distinction. The valuation named was the 'agreed valuation,' the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that the liability should go to that extent and no further."

The court further said (112 U. S. at page 341, 5 Sup. Ct. 156, 28 L. Ed. 717):

"The subject-matter of a contract may be valued, or the damages in case of a breach may be liquidated in advance."

Upon the evidence at the trial we think the instruction requested in respect to the limited liability provision should have been given, but as there is to be a new trial granted upon other grounds, we may say, we think, that the provision as to limited liability is not so conclusive that it is not susceptible of proofs tending to overthrow it, and such as would justify a jury in saying that it was not entered into with a full and fair understanding as to its terms and conditions—such as proofs of fraud practiced upon the shipper, or misunderstanding as to the terms of the bill of lading, or that he was denied an opportunity to place a higher value upon his shipment and pay a higher rate of freight, or proofs as to what the rate would have been if a higher value had

been given; and while the terms of the bill of lading are prima facie evidence of a choice, proofs that the facts in respect to the essential choice of rates were not fully known to the shipper, would be admissible, as well as proofs which would warrant a jury in finding that the contract was not in fact accepted as one limiting liability under the circumstances of the particular shipment. But in the absence of some such proofs, we think the provision should be construed as one limiting liability to the £20 named in the bill of lading.

[3] The bill of lading contained the following provision in relation to insurance:

"The shipowner is not liable for any loss, detriment, or damage to any goods capable of being covered by insurance. and if liable is to have the benefit of any insurance effected upon the goods."

The shipper had insured the automobile with the Boston Insurance Company in the sum of $5,000, and "while on board steamers" the policy states the liability of the insurance company to be for "actual loss or damage caused by marine perils."

William R. Hodges, the president of the insurance company, testified that when the plaintiff made a claim against his company it was pointed out that the damage was not covered by the policy, but that the sum of $4,407.09 was paid to the plaintiff, for which a borrowed and loan receipt was taken, and that this was not a receipt in payment of a loss under the policy.

The defendant admits that this provision in the bill of lading is invalid in so far as it undertakes to compel the shipper to insure against loss, due to its negligence; but contends that the clause is valid which provides that the carrier shall have the benefit of any insurance that the shipper may have, even though the loss is one caused by the negligence of the carrier, and cites the leading case of Phœnix Insurance Co. v. Erie & Western Transportation Co., 117 U. S. 312, 6 Sup. Ct. 750, 29 L. Ed. 873. As the clause provides that the carrier, "if liable, is to have the benefit of any insurance effected upon the goods," clearly under the terms of the policy, the insurance upon the automobile was limited to loss by marine perils while aboard steamers, and damage in unloading was not covered by it, and therefore no insurance against loss by such damage was effected. Whatever arrangement the plaintiff may have made with the insurance company by which any sum was paid him and a borrowed and loan receipt received from him was purely a matter between him and the insurance company, and we think the jury was correctly instructed that they need not burden their minds with the question of insurance at all. Inman v. South Carolina Railway Co., 129 U. S. 128, 9 Sup. Ct. 249, 32 L. Ed. 612; Luckenbach et al. v. McCahan Sugar Refining Co. et al. (Dec. 9, 1918) 248 U. S. 139, 39 Sup. Ct. 53, 63 L. Ed. ——.

[4] The defendant has assigned as error the admission of the testimony of Robert H. Fraser, an expert called by the plaintiff, who testified from his general knowledge of winches, without an examination of the particular winch involved in this case, as to the effect of a strain upon the winch after its jaws had been subjected to wear.

The ground of the defendant's objection is that the witness did not

examine the particular winch which was used to raise the automobile; but we think his testimony was competent, in which he stated his opinion as to the cause of the clutch being thrown out of gear, upon the hypothetical question which was put to him. The objection urged by the defendant is more in the nature of an argument upon the weight to be given to the testimony than against its admissibility.

[5] The defendant has also assigned as error the admission of the testimony of Emil A. Sontag, the plaintiff's chauffeur, who was on the dock when the accident happened to the automobile. He testified that, about 15 minutes after the accident, before the automobile was raised the second time, he had a conversation with the captain of the steamship in which the latter said "that the winch had never carried that heavy weight before; that the weight was too much for the winch"; and that, in the presence of the captain, another man said "that the clutch slipped out and let go the weight."

The evidence disclosed that unloading the cargo was entirely in charge of the stevedores and the captain had no duty with reference to it. The declaration made by him, therefore, was not a part of the res gestæ, but was simply a narrative of a past event. As he was not charged with any duty in regard to unloading the cargo, such a declaration by him would not bind the owner of the steamship. Packet Co. v. Clough, 20 Wall. 528, 540, 22 L. Ed. 406.

In support of the admissibility of evidence of this declaration the plaintiff cites The Potomac, 8 Wall. 590, 19 L. Ed. 511; but that was a suit in admiralty, where the rule is different, and declarations of a master are received as pointed out in The Enterprise, 2 Curtis, 321, 8 Fed. Cas. 729, No. 4,497.

In Packet Co. v. Clough, supra, the plaintiff received an injury while boarding a steamer of the Packet Company, through the alleged carelessness of the servants of the Packet Company in putting out an improper gang plank upon which she was to board the steamer, and conversations of the captain with the plaintiff made 2½ days after the accident occurred, in which he attributed it to the carelessness of the servants of the Packet Company in putting out the plank, were received in evidence, and the court there said:

"What the captain of the boat said of the transaction two days afterwards was, therefore, but a narrative of a past occurrence, and for that reason it could not affect his principals. It had no tendency to determine the nature, quality, or character of the act done, or left undone."

It is claimed by the plaintiff in argument that the admission of evidence of the captain's declaration was harmless error in view of the additional testimony as to the condition of the winch; but we cannot hold that the jury would give no weight to such a declaration by the captain of the steamship.

The defendant had introduced testimony tending to show that the winch was in good condition at the time of the accident and that it had been recently examined by a competent engineer, and had been used to raise much heavier loads than the automobile before and on the day of the accident. This evidence of the declaration of the captain was introduced by the plaintiff in rebuttal, and if believed by the

jury must have caused them to reject as unreliable, testimony introduced by the defendant in regard to the condition of the winch and the weight of the loads which had been previously carried by it, as compared with that of the automobile. We think there was error in admitting evidence of this declaration and that it was prejudicial to the defendant.

The judgment of the District Court is reversed, the verdict set aside, and the case remanded to that court for further action not inconsistent with this opinion. The appellant to recover costs in this court.

ALDRICH, District Judge (concurring). It does not seem that the point has ever been distinctly taken that a rule of limitation in respect to "packages" should not be interpreted as referring to openly crated automobiles, but without considering such a question, the provision seems to have been accepted as applying to shipments of automobiles. Therefore I suppose that view should be followed. But if the question were an open one, I should have grave doubts whether the limitation rule in respect to packages has any reference whatever to such a shipment.