ANDERSON *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY.

[No. 3,317. Filed January 31, 1901.]

CARRIERS.— *Liability.— Contracts.— Negligence.—Shipment of Live Stock.*—Where a complaint in an action against a railroad company for damages for loss and injury to stock shipped charged that the loss was caused by defendant's negligence, an answer alleging that the loss was occasioned alone by heat and suffocation, which risk plaintiff assumed by contract, does not amount to a denial of the negligence charged in the complaint, and is demurrable, since a carrier cannot exempt itself from liability for its own negligence. *pp. 197-200.*

CONTRACTS.—*Action.—Demand.—Carriers.*—An answer in an action on a shipping contract for loss of stock shipped, alleging that

plaintiff did not present his claim for damages before the commence-
ment of the action as provided by the contract was sufficient, since
such stipulation was valid, and a condition precedent to plaintiff's
right of action.  *p. 200.*

INSTRUCTIONS.—*Trial.—Practice.*—Requested instructions must be
presented to the court before the commencement of the argument.
*p. 200.*

SAME.—*Signature of Judge.*—The signature of the trial judge to the
exceptions taken to the refusal of the court to give instructions is
not a sufficient compliance with the statute.  *p. 201.*

From the DeKalb Circuit Court.  *Affirmed.*

*W. M. Brown* and *Cyrus Cline,* for appellant.

*R. C. Bell* and *N. D. Doughman,* for appellee.

COMSTOCK, J.—This action was brought to recover dam-
ages sustained by appellant because of the loss and injury to
hogs shipped over appellee's road from Angola, Indiana,
to East Buffalo, New York.  The complaint was in four
paragraphs.  The second was based upon the liability of
the railway company as a common carrier and consequent
insurer of the freight, without any reference to a special live
stock contract.  This paragraph was withdrawn.  In the
first and third paragraphs the delivery of the hogs to the
appellee for shipment under a written contract is alleged,
and the loss and injury of said hogs, the negligence of ap-
pellee, and the facts constituting such negligence.  The
fourth paragraph alleges the delivery of the hogs under said
agreement, the failure of appellee to transport and deliver
them in good condition to East Buffalo, New York, and the
consequent damages which appellant sustained.  The cause
was put at issue by answer and reply.  The trial resulted in
a verdict and judgment in favor of appellee.  The jury re-
turned with the general verdict answers to interrogatories.

The first specification in the assignment of errors dis-
cussed by appellant is the action of the court in overruling
his demurrer to the amended second paragraph of appellee's
answer.  The objection urged to this paragraph is that it
contains no denial of negligence or any averment of the

exercise of proper care. The answer avers that the live stock was received for shipment and transportation under the terms and conditions of a written contract filed with it as an exhibit, "and not otherwise"; "that whatever loss or injury was suffered by said stock was caused by heat and suffocation alone," and "that the defendant fully and faithfully performed upon its part all the terms and stipulations of said contract to be by it performed in and about the transportation of the stock aforesaid." It further avers that the plaintiff failed to discharge his duty, and failed to present his claim, as provided in the contract, before the commencement of this action. The contract made an exhibit to this paragraph of amended answer recites that the shipper has delivered the stock to the railway company for transportation to its destination in all respects subject to its terms, at the rate of fifteen cents per hundredweight, "which is the lowest published tariff rate of the railway company"; that the shipper acknowledged that he had had the option of shipping the said live stock at a higher rate of freight according to official tariffs, classification, and rules of the railway company, and thereby receiving the security of the liability of the railway company as a common carrier of said live stock, but had voluntarily decided to ship the same under said contract at the reduced rate of freight mentioned. Upon the face of the contract was stamped in large red letters the words: "Entirely at owner's risk. No attendant in charge." It contained among others the following provisions: The shipper should at his own risk load and take care of, feed and water said stock while being transported, whether delayed in transit or otherwise, and to unload the same, and the railway company should be under no liability or duty with reference thereto, except in the actual transportation of the same. The shipper should inspect the body of the car in which said stock was to be shipped and satisfy himself that it was sufficient and safe and in proper order and condition. The railway company should not be

liable on account of any loss or injury to said stock happening by reason of any insufficiency or defective condition of the body of the car, and that the shipper should see that all doors and openings in the car were at all times so closed and fastened as to prevent escape therefrom. The railway company should not be liable for any injury sustained by said live stock by reason of any or either of the following causes, to wit, overloading, crowding one upon the other, kicking or goring, suffocating, fright, heat, cold, or by changes in the weather, or by delay caused by stress of weather, or by obstruction of track, or for any causes beyond its control.

In the event of any unusual delay or detention of said stock, caused by the negligence of the railway company, or its employes, or otherwise, the shipper agreed to accept as full compensation for all loss or damage sustained thereby the amount actually expended by him in the purchase of the feed and water for said stock while detained. No claim for damages which might accrue in favor of the shipper under the said contract should be acknowledged or paid by the railway company or sued for in any court by the shipper unless a claim for such loss or damage should have been made in writing, verified by the affidavit of the shipper, or his agent, and delivered to the freight-agent of the railway company at his office in East Buffalo, New York, within five days from the time the said stock was removed from said car. The objection is well taken. The complaint avers that the want of care and diligence on the part of appellee in transporting said stock, for the loss of which a recovery is sought, was the cause of appellant's loss. The allegation of the answer that the loss or injury was occasioned alone by heat and suffocation is not a denial of the negligence charged.

A carrier can not exempt himself from liability for his own negligence. The effect of a contract limiting the common law liability of a carrier is to change the character of

that liability by removing from it the element of insurance of the goods by the carrier and to place his responsibility for loss or damage upon the ground of negligence alone. The carrier does not cease to be a carrier, but he is no longer an insurer, although he is held to reasonable diligence. "In numerous cases he is held, under such circumstances, to be a private carrier for hire, and hence subject to an entirely different rule from that which would have fixed his responsibility if no special contract had been made." *Insurance Co.* v. *Lake Erie, etc., R. Co.,* 152 Ind. 333. See, also, *Cleveland, etc., R. Co.* v. *Heath,* 22 Ind. App. 47, and authorities there cited.

But the answer avers that appellant did not within the time required by the terms of the contract, and did not at any time before the commencement of this action present to appellee his claim for damages. The contract provides that no claim for damages under the contract shall be sued for in any court "unless a claim for such loss or damage shall be made in writing verified by the affidavit of the said shipper or his agent, and delivered to the freight agent of said carrier at his office in East Buffalo within five days from the time said stock is removed from said car or cars." Stipulations of this character have been held valid, and being a condition precedent to appellant's right of action, the demurrer was properly overruled. Ray on Neg. of Imposed Duties, p. 221; Hutchinson on Carriers, §259.

Counsel next discuss the alleged error of the court in refusing to give to the jury instructions requested by appellant. Appellee's counsel object to the consideration of this action of the court for the reason that it does not appear from the record that these instructions were presented to the court at the proper time. Instructions must be presented before the commencement of the argument. *Craig* v. *Frazier,* 127 Ind. 286; *Adams* v. *Main,* 3 Ind. App. 232, 50 Am. St. 266.

If instructions are not presented before argument, they

may be correctly refused. *Terry* v. *Shively,* 93 Ind. 413; *Surber* v. *State,* 99 Ind. 71. All presumptions are indulged in favor of the action of the trial court. *Sprankle* v. *Bart,* 25 Ind. App. 681. These instructions can not therefore be considered.

But the broader claim is made and insisted upon by counsel for appellee that neither the instructions nor the evidence is in the record. The transcript of the evidence has been prepared and made a part of the record in this appeal in compliance with the provisions of section six of an act approved March 3, 1899, concerning the appointment of shorthand court reporters. Acts 1899, p. 384. In the recent case of *Adams* v. *State,* 156 Ind. 596, said section is held to be invalid and inoperative by our Supreme Court. The method pursued was, therefore, unauthorized, and the evidence is not before us. In the absence of the evidence questions arising thereon and the pertinency of the instructions can not be determined. Besides, only the instructions given by the court of its own motion are signed by the judge. To these no exception was taken. The exceptions taken to the giving and the refusal to give certain instructions respectively given and refused are signed by the judge; but this is not the signing of the instructions required by the statute. By bill of exceptions it appears that certain instructions requested by appellant were refused and modified and given as modified; to which action of the court exceptions were taken. The jury were fully instructed, and the instructions considered as a whole present no reversible error.

We find no error for which the judgment should be reversed. Judgment affirmed.