ALASKA S. S. CO. et al. v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener.)

(District Court, S. D. New York. July 12, 1919. Dissenting Opinion, July 15, 1919.)

1. CARRIERS �köü23—BILLS OF LADING—POWER OF CONGRESS.
Congress may prescribe what terms common carriers, subject to Interstate Commerce Act Feb. 4, 1887, and amendments (Comp. St. § 8563 et seq.), may insert in their bills of lading.

2. COMMERCE ⊙85—INTERSTATE COMMERCE COMMISSION—POWERS—BILLS OF LADING.
The Interstate Commerce Commission has no power to prescribe bills of lading for either domestic or export business.

3. COMMERCE ⊙85—INTERSTATE COMMERCE COMMISSION—POWERS—BILLS OF LADING.
The Interstate Commerce Commission has no power to prescribe an inland bill of lading, depriving carriers of the benefits of statutes limiting the liability of vessel owners and of Harter Act Feb. 13, 1893 (Comp. St. §§ 8029–8035).

4. SHIPPING ⊙203—HARTER ACT—REPEAL—IMPLICATION.
Harter Act Feb. 13, 1893 (Comp. St. §§ 8029–8035), and statutes limiting liability of vessel owners, were not impliedly repealed by Interstate Commerce Act Feb. 4, 1887, and amendments, especially as section 15 (Comp. St. § 8583) provides water transportation shall be subject to the laws applicable to transportation by water.

5. COMMERCE ⊙92—VACATING ORDER OF INTERSTATE COMMERCE COMMISSION—DISTRICT OF SUIT.
Under the direct provisions of Act Oct. 22, 1913 (Comp. St. § 994), an action to set aside an order of the Interstate Commerce Commission is properly brought in the district in which several of the petitioners have their principal place of business.

6. COMMERCE ⊙93—ORDER OF INTERSTATE COMMERCE COMMISSION—SETTING ASIDE—PARTIES.
A petition to set aside an order of the Interstate Commerce Commission will not be denied, merely because most of the petitioners are temporarily not subject to the order, because under federal control.

7. COMMERCE ⊙96—ORDERS OF INTERSTATE COMMERCE COMMISSION—IRREPARABLE DAMAGES—INJUNCTION.
An order of the Interstate Commerce Commission, prescribing bills of lading for both domestic and export transportation, would subject the carriers to irreparable damage, within rule authorizing issuance of a preliminary injunction.

Learned Hand, District Judge, dissenting.

In Equity. Petition by the Alaska Steamship Company and others against the United States, in which the Interstate Commerce Commission intervened. On petitioners' motion for an injunction pendente lite and respondents' motion to dismiss the petition. Motion to dismiss denied, and preliminary injunction granted.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper, of New York City, and Theodore W. Reath, of Philadelphia, Pa., of counsel, and Ray Rood Allen, E. H. Boles, and George F. Brownell, all of New York City, Francis I. Gowen, of Philadelphia, Pa., Albert H. Harris and W. S. Jenney, both of New York City, Alexander R. Lawton, of Savannah, Ga., Blewett Lee, of Chicago, Ill., W. W. Meyer, of New Haven, Conn., Thaddeus H. Swank, of Baltimore, Md., and F. H. Wood, of New York City, on the brief), for petitioners.

Blackburn Esterline, Sp. Asst. Atty. Gen., and Francis G. Caffey, of New York City, for the United States.

Charles W. Needham, of Washington, D. C. (P. J. Farrell, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Before WARD, Circuit Judge, and LEARNED HAND and MAYER, District Judges.

WARD, Circuit Judge. This is a petition filed by common carriers wholly by railroad, or partly by water, under arrangements for a continuous carriage with common carriers by water, for a decree setting aside an order of the Interstate Commerce Commission, dated March 14, 1919, requiring them to use two certain bills of lading, one for domestic and the other for export transportation, prescribed by the Commission.

The petitioners move for an injunction pendente lite. The United States and the Interstate Commerce Commission move to dismiss the petition.

The only evidence before the court is the petition, the answer of the Interstate Commerce Commission, and the report and order of the Commission. The verified petition, regarded as an affidavit, and the answer of the Commission, sufficiently raise the only question we shall consider, which is one of law.

[1, 2] Congress has unquestionably the power to declare what terms common carriers, subject to Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379, and its amendments (Comp. St. § 8563 et seq.), may or may not insert in their bills of lading, and it has done so from time to time. For the purpose of this case we shall assume that Congress can delegate this legislative power to the Interstate Commerce Commission, but we shall expect to find such delegation in clear and unmistakable language. Examination of the statutes does not convince us that Congress had any intention to confer upon the Commission the right to prescribe the terms of the carriers' bills of lading.

Section 1, as amended by Act June 18, 1910, c. 309, § 7, 36 Stat. 539 (Comp. St. § 8563), paragraphed for greater clearness, requires all common carriers, subject to the act, to establish, observe, and enforce:

(1) "Just and reasonable classifications of property for transportation, with reference to which rates, tariffs, regulations, and practices are or may be made or prescribed."

(2) "Just and reasonable regulations and practices affecting classifications, rates, or tariffs, the issuance, form, and substance of tickets, receipts, and bills of lading * * * and all other matters relating to or connected with the

receiving, handling, transportation, storing, and delivery of property subject to the provisions of this act.  *   *   *   ”

"Every such unjust and unreasonable classification, regulation, and practice with reference to commerce between the states and with foreign countries is prohibited and declared to be unlawful."

It may be noted that the foregoing provisions apply to carriers only.

Section 15 (Comp. St. § 8583) prescribes the powers of the Commission in the premises, and not one word about contracts or the substance of bills of lading is used. The reference is only to rates, classifications, regulations, or practices in connection with the receiving, handling, transporting, storing and delivery of property. The Commission is authorized—

"to determine and prescribe what will be the just and reasonable individual or joint rate or rates, charge or charges, to be thereafter observed in such a case as the maximum to be charged, and what individual or joint classification, regulation, or practice is just, fair, and reasonable, to be thereafter followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the Commission finds the same to exist, and shall not thereafter publish, demand, or collect any rate or charge for such transportation or transmission in excess of the maximum rate or charge so prescribed, and shall adopt the classification and shall conform to and observe the regulation or practice so prescribed."

All this refers to rates, classifications, regulations, and practices. That the Commission has power under section 12 of the act (Comp. St. § 8576), 'to investigate as to the fairness of the carriers' bills of lading we have no doubt, but we discover nowhere any authority conferred upon it to draw the carriers' bills of lading either in whole or in part. If they are in any respect unjust or unreasonable or unlawful, the courts are open to the parties injured; if they contain any limitation of liability for loss or damage which Congress has declared to be void, the courts will say so. Missouri, Kansas & Texas Ry. v. Harriman, 227 U. S. 668, 33 Sup. Ct. 397, 57 L. Ed. 690.

[3, 4] The question is one of power to make the order, and not one of its expediency. Therefore we shall not inquire whether the alterations the Commission has prescribed in the bills of lading are reasonable or not, because we think it has no power to make them. In any event, there was no power to prescribe an inland bill of lading in form or substance depriving the carriers of the benefits of the statutes limiting the liability of vessel owners and of Harter Act Feb. 13, 1893, c. 105, 27 Stat. 445 (Comp. St. §§ 8029-8035). These statutes still survive, unless repealed by implication, and this result we are of opinion was neither intended nor accomplished.

Indeed, section 15 prescribes:

"*   *   * Nor shall the Commission have the right to establish any route, classification, rate, fare, or charge when the transportation is wholly by water, and any transportation by water affected by this act shall be subject to the laws and regulations applicable to transportation by water."

The distinction between the power to make an order and the expediency of an order which the Commission has the power to make is stated in Interstate Commerce Commission v. Illinois Central Ry. Co., 215 U. S. at page 470, 30 Sup. Ct. at page 160, 54 L. Ed. 280, referred

to with approval in Interstate Commerce Commission v. Baltimore & Ohio R. R. Co., 225 U. S. at page 340, 32 Sup. Ct. 742, 56 L. Ed. 1107, Ann. Cas. 1914A, 504:

"Beyond controversy, in determining whether an order of the Commission shall be suspended or set aside, we must consider (a) all relevant questions of constitutional power or right; (b) all pertinent questions as to whether the administrative order is within the scope of the delegated authority under which it purports to have been made; and (c) a proposition which we state independently, although in its essence it may be contained in the previous one, viz. whether, even although the order be in form within the delegated power, nevertheless it must be treated as not embraced therein, because the exertion of authority which is questioned has been manifested in such an unreasonable manner as to cause it, in truth, to be within the elementary rule that the substance, and not the shadow, determines the validity of the exercise of the power. Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 698 [15 Sup. Ct. 268, 39 L. Ed. 311]. Plain as it is that the powers just stated are of the essence of judicial authority, and which, therefore, may not be curtailed, and whose discharge may not be by us in a proper case avoided, it is equally plain that such perennial powers lend no support whatever to the proposition that we may, under the guise of exerting judicial power, usurp merely administrative functions by setting aside a lawful administrative order of what our conception is as to whether the administrative power has been wisely exercised. Power to make the order, and not the mere expediency or wisdom of having made it, is the question."

[5-7] All the petitioners are at present under federal control, except five of the water carriers. Of these the Clyde Steamship Company and the Mallory Steamship Company have their principal operating offices in the city of New York, and so has the Old Dominion Steamship Company, which is under federal control. Of the railroads the New York Central has its principal office in this city. Therefore the jurisdiction of the court over the person conforms to the requirements of Act Oct. 22, 1913, c. 32, 38 Stat. 219. It is said that the petitioners, except the five water carriers above mentioned, are unaffected by the order, because now in the actual control of the Director General of Railways. This control is expected to cease within the current year, and they will be subject to the order the moment their properties are returned to them, whether the Director General complies with the order or not. If it was right to subject them presently to the order, it is right that they should be allowed presently to dispute it, and we think there can be no doubt that the water carriers, who can only escape from the order by withdrawing from joint arrangements with the land carriers and making entirely new dispositions, and all the carriers who will be bound by it when their properties are returned to them, will be subjected to damage irreparable within the meaning of the law. It would be impossible for the carriers in many cases to collect what they have paid out or lost, if the Supreme Court were to hold that the order was not within the power of the Commission.

The motion to dismiss the petition is denied, and the motion for a preliminary injunction is granted.

LEARNED HAND, District Judge (dissenting). I own that, had it not been for the conclusion of my Brothers, I should have thought the jurisdiction of the Commission beyond any question; but their decision, of course, shows that my certainty was wrong, and as the case

will go up it is fair to the respondents that I should state my reasons for a contrary conclusion. Under section 1 of the Act to Regulate Commerce (Comp. St. § 8563) it is made the duty of all common carriers "to establish * * * just and reasonable regulations and practices affecting * * * the issuance, form, and substance of * * * bills of lading." I do not understand that any one questions that the duty imposed by this language upon carriers includes the subject-matter which the Commission assumed to regulate in this case, and indeed I cannot see how any language could be more explicit than that which Congress has used. I may start, therefore, with the assumption that it is the duty of the carriers to regulate in accordance with justice the form and substance of their bills of lading.

The issue in the case is whether the visitatorial powers of the Commission extend to such regulations, and this question is concededly to be determined by the language used in section 15 (Comp. St. § 8583) which reads as follows:

"Whenever * * * the Commission shall be of opinion that any * * * regulations, or practices whatsoever of such carrier or carriers subject to the provisions of this act are unjust or unreasonable * * * or otherwise in violation of any of the provisions of this act, the Commission is hereby authorized and empowered to determine and prescribe what * * * regulation, or practice is just, fair, and reasonable, to be thereafter followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent to which the Commission finds the same to exist, * * * and shall conform to and observe the regulation or practice so prescribed."

It is quite true that this language does not specifically repeat all the subject-matter of the duties imposed upon the carriers by section 1, but it seems to me quite clear, if one reads the two sections in the light of their structural relation, that the Commission's jurisdiction under section 15 is intended to be coextensive with the duties imposed upon the carrier under section 1. Once the carriers act, the Commission, within the limits prescribed by law, is given power to examine their practices, correct them, and make reasonable and lawful substitutes, which they are bound to follow. I do not quite see by what reasoning it is supposed that the Commission under section 15 is limited to supervision over rates or charges, in view of the mention, not only of rates and charges, but "any individual or joint classifications, regulations, or practices whatsoever." While I prefer to rest my decision upon the general structure of the statute, rather than upon any specific language, the comprehensive intent is significant which is expressed by the words "practices whatsoever."

The Tank Car Case, 242 U. S. 208, 37 Sup. Ct. 95, 61 L. Ed. 251, does not give any color to the petitioner's position. There the Commission tried to compel the roads to supply public tank cars, which necessarily involved an increase in their equipment, and the question involved was whether it was a "practice," within the meaning of section 1, to furnish or not to furnish them. Taken verbally alone, the language was not apt to express such an idea, and the consequence of the Commission's interpretation obviously put carriers within its control in a way which nothing else in the act indicated. The Supreme

Court held that the Commission had not been authorized to require the roads generally to furnish new equipment to any extent that might be necessary. In the face of the explicit mention of bills of lading in section 1 the analogy of the case is not apparent.

As I think the Commission had power, therefore, to enter into the subject-matter and prescribe legal and reasonable bills of lading, it becomes necessary to consider whether the bill of lading actually prescribed was valid in all its particulars. In the first place, I must assume on these motion papers that the decision of the Commission, in all respects in which evidence might support it, is properly supported, for, although the petition in some instances alleges that there was no evidence before the Commission justifying its finding, that allegation is denied, and I must disregard it on motion for preliminary injunction. The question, therefore, simply is whether, in any instance, the decision of the Commission is such that it could be justified by no evidence whatever; in short, that it is contrary to law.

The first question is as to the elimination of the exemption for loss and injury due to strikes and riots, which the Commission struck out because it thought it illegal after enactment of the Carmack and Cummins Amendments (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595, and Act March 4, 1915, c. 176, 38 Stat. 1196 [Comp. St. §§ 8592, 8604a, 8604aa]). Now the Carmack Amendment is not to be taken either as narrowing or widening the common-law duties of carriers. The petitioners suppose that the phrase, "caused by it," narrowed those duties, but I cannot agree. It occurs in that part of the amendment which extends the liabilities of the initial carrier to the defaults of a connecting carrier, and is used only as a convenient way of describing those liabilities. It was in no sense an effort to define anew the duties of the carrier, which the statute took over from the common law. This was the meaning of the Supreme Court, both in Adams Express Co. v. Croninger, 226 U. S. 491, 506, 507, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, and in Cincinnati, etc., Ry. v. Rankin, 241 U. S. 319, 326, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265.

There would, indeed, be insuperable difficulties in construing the words otherwise. No one asserts that the phrase limits the liabilities of the carriers to losses positively caused by them, yet if it includes negligence, on the theory that omissions may be the "cause" of loss, there is no warrant in the language used for saying that only such losses are "caused" by omission as are "caused by" the absence of reasonable care. If omission to prevent a loss be a cause of loss, then the loss is as much "caused by" the omission of any precaution whatever through which it might have been prevented as of reasonable precaution. Reasonable care has nothing to do with the carrier's duties, and the decision of the Supreme Court in Cincinnati, etc., Ry. v. Rankin, supra, is directly to that effect.

If, then, the Carmack Amendment imposed upon the carriers their duties at common law, the second clause of that amendment prohibits their exemption by contract from the duties so imposed, for the prohibition relates to "the liability hereby imposed." Before the Cum-

mins Amendment the Supreme Court had held in a number of cases that, while the carrier could not exempt itself from liability, it might limit its amount; but the Cummins Amendment, which took away that right, necessarily took from the carrier any modification whatever of its common-law duties. Nor is there anything in any of the decisions which seems to me to contradict that conclusion. Penn. R. R. v. Olivit Bros., 243 U. S. 574, 37 Sup. Ct. 468, 61 L. Ed. 908, only decided that the carrier was not liable for damages caused by delay, as indeed he was not at common law in any event, at least unless the delay was due to his negligence. That case is not in point for other reasons.

It therefore appears to me that the clause struck out by the Commission was illegal, and it was not necessary that any evidence should be taken upon it. It was fairly within the scope of the order of May 6, 1912, which in most general terms invited reconsideration of the bill of lading as it then stood, and though the report of the Commission states that the matter was not in issue, there was no evidence which could have been material to the issue if one had been framed. I conclude, therefore, that the action of the Commission was right in this respect.

The second question at issue is the clause limiting the liability of the initial carrier to its own line when lawful. I do not find any such provision in the domestic bill of lading proposed by the carriers, but if it was there, and was eliminated, I see no ground for complaint. The Carmack Amendment expressly enacted the contrary, and there are no exceptions from it which could give any scope to the clause. The petitioners suggest that the carrier might be liable under the bill of lading for a default of the connecting carrier as warehouseman, except for the insertion of that clause. If he were so liable, the clause would not protect him, for the Carmack Amendment imposes the duty of warehousing in the terminal carrier as a part of "transportation," and, as it imposes it, so also it forbids its exemption or limitation by amendment. In Cleveland, etc., R. R. v. Dettelbach, 239 U. S. 588, 36 Sup. Ct. 177, 60 L. Ed. 453, it was decided, although the contrary was the law of the state, that a limitation of liability in the bill of lading protected the terminal carrier while acting as warehouseman. This was before the Cummins Amendment, and while carriers could limit their liability. The theory of the case was that the federal bill of lading covered the duties of warehousing as well as carrying. If so, when the Cummins Amendment took away the right to limit, it necessarily affected the duties of warehousing, as the Carmack Amendment had affected it before. The petitioners' suggestion is met by that case.

The third question is as to the liability for shipments delivered at private sidings. At worst, the question was within the power of the Commission to determine in accordance with evidence. Prima facie, the carrier remains such after physical receipt and until he has delivered the goods, and in the absence of some agreement it is not delivery to shunt cars upon a siding. It is doubtful whether the Commission has any power whatever to provide for the termination of such liability prior to actual delivery. But that question is not raised here.

The fourth question is as to the release of the consignor from liability

for freight, if delivered to him without requiring payment. of freight. The illegality of the Commission's order in this respect is not strenuously urged. It seems to me so clearly within the purview of its powers that I think it unnecessary to discuss it in detail.

The fifth question concerns the provision that the carrier shall bear the burden of proof on all issues of negligence. The petitioners assert that this changed their liability and is illegal on that account. A change in the burden of proof, however, has not been generally so regarded. As in the case of rules of evidence (Downs v. Blount, 170 Fed. 15, 95 C. C. A. 289, 31 L. R. A. [N. S.] 1076), and of presumptions (Howard v. Moot, 64 N. Y. 262), the Legislature may change the burden of proof, even to affect existing rights and duties (Chandler v. Northrop, 24 Barb. [N. Y.] 129, Wallace v. West. N. C. R. R. Co., 104 N. C. 442, 10 S. E. 552). If so, the petitioners are wrong in supposing that a change in the burden of proof changes their liability. Rather it falls within the administrative powers of the Commission, and it can hardly be suggested that justice does not require the carrier, who has all the information, to bear the burden of proof upon that issue.

The sixth question is of the valuation of the loss or injury at the place of origin. In most cases the actual value of the goods which the carrier must pay under the Cummins Amendment would at common law have been determined at the place of destination. It is not necessary to say that this applies in all cases. At common law the carrier must pay for the actual value of the goods, and it might be urged that the Commission had done all that in any event it had the right to do when it struck out all mention of the subject from the bill of lading. I need not, however, go so far as this. It is possible that the Commission might have found, in the exercise of its administrative power, that the valuation at the place of shipment, or at the place of destination, was a convenient regulation to compel the shipper to agree to. The only question here is whether it might leave it without any regulation at all.

The seventh provision is as to whether the carrier shall remain liable as such during "free time." Of the three rules under which termination of the carrier's liability is decided, that which has by far the greater weight of authority is known as "the New York rule." I have found no federal case upon the subject, except Howe v. The Lexington, 12 Fed. Cas. 661 (No. 6,767a), an opinion of Judge Betts, which seems to follow the New York rule, which is also the English rule. As stated by Justice Lurton in Adams Express Co. v. Croninger, all the liabilities of the carriers are now to be determined by federal law, and on a question, like this, of general commercial law, we act in accordance with our own understanding. Under the "New York rule" the carrier must give notice to the consignee, when possible, and give him further a reasonable time to take away his goods, and, if he fails, the carrier must put them in a safe place. These acts of the carrier are a substitute for actual delivery, which in the earlier cases he was charged to make. Now "free time" means that the carrier has no right to charge for care of the goods, because his carrier's charge covers the service, and as soon as he may charge for storage it would seem

that those duties must have terminated. Prima facie, at least, the two periods are therefore coextensive. This record does not contain any of the evidence on which the Commission based its finding, and I have nothing to go on, therefore, but presumption. Until the hearing, I see no reason to disturb the finding or the order based upon it.

The final question is the elimination of the customary clauses which protect the water lines, on the theory that the Carmack and Cummins Amendments override the Harter Act and those other acts specifically affecting shipping. So far as concerns the statute limiting the liability of shipowners, it seems unnecessary to hold that the amendments have this effect. They only provide that the carriers may not exempt themselves from their duties by contract. While the carrier remains liable notwithstanding that contract, the extent of his liability is still subject to the provisions of all other positive law. It is true, of course, that the result may be that the initial carrier is liable generally, and has only a limited recourse over against the water carrier. If this be an injustice, it is one which arises from the liability statute, and not from the Carmack and Cummins Amendments.

As to the Harter Act, however, I can see no escape from the conclusion that there is a conflict between it and the amendments, in which the earlier statute must yield. But the petitioners argue that the last clause of the third paragraph of section 15 (Comp. St. § 8583) shows that the purpose was to leave water carriers subject only to the law applicable to transportation by water. The words are as follows:

"Any transportation by water affected by this act shall be subject to the laws and regulations applicable to transportation by water."

Now the act, with certain exceptions not necessary to consider, does not affect any transportation which is wholly by water, but only when partly by rail and partly by water (section 1 [section 8563]), and indeed the clause just quoted from section 15 immediately follows a provision, perhaps unnecessary, which denies power to the Commission to fix any rates for water transportation solely. But even textually the position of the petitioners is not sound, for the statute does not say that water transportation affected by the act shall be "subject only" to the laws applicable to the transportation by water. There is nothing exclusive in the language, and the more natural interpretation of it would seem to be that it shall be "subject also" to the laws and regulations applicable to water transportation. Indeed, the language fits better with the purpose to make water law applicable, wherever it does not conflict, than with the purpose to make it supersede the act.

Moreover, if one considers the effect of the interpretation which the petitioners desire, its meaning is much reinforced, for the act and its amendments were an elaborate effort to produce a comprehensive and equitable regulation of transportation, both by land and by land and water, and it can hardly be supposed that provisions like the Carmack and Cummins Amendments were intended to subject railroads to one kind of obligation and the connecting water carriers to another. At least, no valid reason suggests itself for such a distinction, when all had been free before those amendments to protect themselves in exactly the same way. It is true that the water carriers retain an advantage under the

259 F.—46

Limitation Act; but to hold that they may exempt themselves altogether is not only to give them discriminatory advantage without any reason, but is to subject the railroads to their liabilities without any recourse, because I do not see how the initial carrier on any hypothesis could protect himself from the default of the water carrier. In prescribing a unitary system for through transportation, it seems to me hardly conceivable that Congress would have introduced, without any apparent reason, such inequalities as these.

In conclusion, therefore, I see no reason to hold that the Commission has exceeded its power in any part of what it did. It may, of course, transpire upon the hearing that some of the findings were without basis in evidence, and, if so, the petitioners will have the advantage of that fact; but upon this record it is my opinion that no interlocutory injunction should issue.

The motion to dismiss the petition, however, should be denied.