This is an appeal taken by plaintiff, International Shoe Company, from a judgment of the lower court maintaining the exception of no cause of action filed by the defendant, Gulf, Mobile Ohio Railroad Company, to plaintiff's suit. Our brother below gave written reasons for his judgment and has so completely set forth the issues and so thoroughly discussed the law applicable to the issues, that we are convinced of the correctness of his conclusion. We believe that we need not add anything to that contained therein, and we have, therefore, concluded to adopt his opinion, as the opinion of this court.
"Reasons for Judgment:
"Plaintiff, International Shoe Company, brings this action against the defendants, Flota Mercante Del Estado and Gulf, Mobile Ohio Railroad Company, for damages in the sum of $2,000.00, which plaintiff avers is the extent of the loss and depreciation on certain hides which were shipped from Buenos Aires, Argentina, to Marlinton, West Virginia, and carried by the defendant steamship company and the defendant railroad company.
"The gist of the action is set forth in Paragraphs 3 and 4 of plaintiff's petition in which the following allegations are made:
" 'On or about March 5, 1943, at Buenos Aires, Argentina, A.B. Villamil, S. R. Ltd., delivered to defendant steamship company, consigned to the First National Bank of Boston, Boston, Mass., for account of International Shoe Company, plaintiff herein, two thousand (2000) salted cattle hides, marked "3 3 Green Tag," all in good order and condition, to be carried by defendant steamship company aboard its steamship Rio Chico to the port of New Orleans, there to be delivered in like good order and condition and to be forwarded over the line of defendant, Gulf, Mobile Ohio Railroad Company, to the City of Marlinton, West Virginia, there to be delivered in like good order and condition as when received, all in consideration of certain freight charges thereupon paid, or agreed to be paid.
" 'Thereafter, said shipment was carried on board said Steamship RIO CHICO from the port of Buenos Aires, Argentina, to the port of New Orleans, Louisiana, where it arrived on or about April 7, 1943, not however in good order and condition but seriously damaged, being red fleshed on hips and shanks, stained, hair-slipped and grained, *Page 538 
as more particularly described in Paragraph XIV hereof. Thereafter, said merchandise was transshipped and carried over the line of defendant, Gulf, Mobile Ohio Railroad Company, to Marlinton, West Virginia, where said merchandise arrived, further seriously damaged and impaired in value, being red fleshed on the heads and shanks, stained, hair-slipped and grained, as more particularly described in Paragraph XIV hereof, all in violation of defendants' obligations and duties as common carriers of merchandise by water, and by rail, for hire. Said merchandise was carried by defendant steamship company under its bill of lading No. 73, dated at Buenos Aires, March 5, 1943, and by defendant railroad company under its bill of lading No. _____, dated at New Orleans, Louisiana, April 24, 1943, photostatic copy of each such bill of lading being attached hereto and made part hereof, as fully as though set forth in extenso herein.'
"The plaintiff further avers that the exact cause of the spoiled condition of said shipment of hides is unknown to it, but it nevertheless, on information and belief, alleges with great particularity numerous negligent acts of commission and omission on the part of defendant carriers which it contends contributed to the damaged and spoiled condition of said hides.
"The defendant, Gulf, Mobile Ohio Railroad Company, filed an exception of no cause of action predicated upon the failure of the plaintiff to allege that it filed a claim in writing with defendant railroad company within nine months after delivery of the hides, as required by Section 2 (b) of the bill of lading issued in this case, which reads as follows:
" 'Sec. 2 (b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.'
"The exception was sustained and plaintiff was given an opportunity to amend its petition. Plaintiff thereupon filed a supplemental and amended petition but again failed to allege the filing of claim as required by Section 2 (b) of the bill of lading. Instead, in its supplemental and amended petition plaintiff contends that certain alleged orders and findings of the Interstate Commerce Commission have the effect of making unreasonable, and therefore null and void, the provisions of Section 2 (b) of the bill of lading aforesaid.
"Plaintiff, in its supplemental and amended petition, particularly relies upon an order of the Interstate Commerce Commission issued in its proceedings No. 4844, entitled: 'In the Matter of Bills of Lading,' directing, among other things, (52 I.C.C. 671):
" 'That the said Walker D. Hines, Director General of Railroads, and all said carriers subject to the act to regulate commerce, heretofore served with notice of this proceeding and parties thereto, be, and they are hereby, notified and required to adopt and put in use on or before August 8, 1919, * * * and thereafter to use and employ, uniformly when they issue bills of lading covering shipments, other than live stock, moving in interstate commerce * * * the said certain forms of bills of lading referred to as Appendixes B and D.'
"Plaintiff avers that said Appendix B referred to in the above order set forth the 'Form of Domestic (Straight) Bill of Lading Prescribed by the Interstate Commerce Commission,' and incorporated, as a part thereof, the following provisions among its 'Conditions':
" 'Sec. 2. * * * Except where the loss, damage or injury complained of is due to delay or damage while being loaded or *Page 539 
unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property (or in case of export traffic, within nine months after delivery at port of export), or in case of failure to make delivery, then within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed. Suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed.'
"Plaintiff also relies upon a decision of the Interstate Commerce Commission under date of October 21, 1921, in its proceeding No. 4844 (64 ICC 357), in which report plaintiff says the Commission held with respect to the Uniform Domestic Bill of Lading:
" 'We are of the opinion, in view of the changes in the Interstate Commerce Act [49 U.S.C.A. § 1 et seq.] made on February 28, 1920, and in the light of the entire record as supplemented at the recent hearing, that the bill of lading prescribed by us should be modified to read as shown in Appendix D hereto. We are of opinion and find that the rules and regulations contained in the domestic bills of lading used by the carriers respondent hereto will be unreasonable for the future in so far as they differ from the rules and regulations made by us prescribing the uniform bill of lading appearing as appendix D hereto, which we find will be reasonable for the future.'
"Plaintiff alleges that said Appendix D referred to in the above proceeding sets forth the 'Form of Domestic (Straight) Bill of Lading Prescribed by the Interstate Commerce Commission,' and incorporates, as a part thereof, the following provision among its 'Conditions':
" 'Sec. 2 (b). Claims for loss, damage, or injury to property must be made in writing to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property, (or in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed; provided that if such loss, damage, or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery. Suits for loss, damage, injury, or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed; Provided, That in case the claim on which suit is based was made in writing within six months, or nine months in case of export traffic (whether or not filing of such claim is required as a condition precedent to recovery), suit shall be instituted not later than two years and one day after notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.'
"Plaintiff further points out that the 'Form of Domestic (Straight) Bill of Lading prescribed by the Interstate Commerce Commission,' including the above quoted Section 2 (b), may be found in the Code of Federal Regulations (Title 49, Part 31, Sections 31.1 and 31.2) pursuant to Section 11 of the Federal Register Act, as amended (50 Stat. 304, 44 U.S.C. § 311 [44 U.S.C.A. § 311]); and plaintiff shows that the Federal Register Act specifically provides that (Sec. 11(c):
" 'The codified documents of the several agencies published in the supplemental edition of the Federal Register pursuant to the provisions of subsection (a) hereof, as amended by documents subsequently filed with the Division * * * shall be primafacie evidence of the text of such documents and of the fact that they are in full force and effect on and after the date of publication thereof.'
"Plaintiff further avers that said Sec. 2 (b) of the Uniform Bill of Lading prescribed by the Commission has not in any manner been suspended, or modified, or set *Page 540 
aside, by order of the Commission, or suspended or set aside by any court, and hence said provision was in full force and effect on the date the bill of lading was issued in the instant case; and plaintiff finally alleges that to the extent that Section 2 (b) of the 'Contract Terms and Conditions' of the bill of lading issued by the defendant railroad varies from the terms and conditions which plaintiff contends were prescribed by the Interstate Commerce Commission as above set forth, said terms and conditions prescribed by the Interstate Commerce Commission are read into, and become a part of, the railroad bill of lading and contract of carriage in this matter, the printed terms and conditions thereof to the contrary notwithstanding.
"The defendant, Gulf, Mobile Ohio Railroad Company, renewed its exception of no cause of action to the original and supplemental petitions of plaintiff, based upon plaintiff's failure to allege that it filed its claim in writing within nine months after delivery of the property, which filing of claim, under the terms and conditions of Section 2 (b) of the bill of lading or contract of carriage sued upon, is made a condition precedent to recovery.
"Replying specifically in the exception to the contentions made by plaintiff in its supplemental and amended petition, defendant contends that the Interstate Commerce Commission's order of April 14, 1919, referred to in the supplemental and amended petition, was not in force at any time during the year 1943 when the contract of carriage sued upon was executed; that in point of fact the operation and enforcement of said order was first enjoined by the U.S. District Court for the Southern District of New York in 'Alaska SS Company et al. v. United States (Interstate Commerce Commission, intervenor), 259 F. 713; that thereafter said order was rendered ineffective by the amendment to the Transportation Act adopted by Congress on February 28, 1920, (see United States v. Alaska SS Company,253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808); and that finally it was set aside by the Interstate Commerce Commission itself (see 64 I.C.C. 357).
"Replying further to the contentions made in the supplemental and amended petition, the defendant railroad contends that no formal order was entered by the Interstate Commerce Commission in the matter reported in 64 I.C.C. 357; that the form 2 (b) as written into the suggested form of bill of lading in that proceeding and found in the Code of Federal Regulations was rendered inoperative by the adoption of the Transportation Act of April 23, 1930; that on May 24, 1930, defendant, along with other carriers, in the Official Southern and Western Classification territories filed with the Interstate Commerce Commission a new form of Domestic Bill of Lading to meet the changes authorized and required by said amendment of April 23, 1930, which incorporated among its provisions a section 2 (b) in language identical with that contained in the bill of lading issued in the instant cause.
"Defendant further annexes to and makes part of its exception certified copies of proceedings before the Interstate Commerce Commission which show that said new form of Domestic Bill of Lading was filed with the Interstate Commerce Commission on May 24, 1930, that no oppositions were filed thereto; that the said proposed new form of bill of lading became effective August 1, 1930, and that it was in force on the day the bill of lading was issued in the instant case.
"In order that the question raised by the exception may be determined on the face of the papers, the parties have stipulated in connection with the exception that the court may take judicial notice of the decisions of the Interstate Commerce Commission heretofore rendered and hereafter rendered; of the entire docket before the Interstate Commerce Commission entitled 'In the Matter of Bills of Lading, No. 4844', and of the Code of Federal Regulations of the United States of America, all of which shall be considered pleaded as facts and offered in evidence, if that is necessary under the law. They have further stipulated that all of the documents attached to and made part of the exception filed by the defendant will be considered as having been properly offered in evidence, and that the Consolidated Freight Classification No. 15, annexed to the exception, is the freight classification of defendant railroad company on file with *Page 541 
the Interstate Commerce Commission at the time the contract and bill of lading sued on in this case was issued.
"The first question to be determined in the case is whether Clause 2 (b) of the bill of lading, as issued in this case, is violative of any provisions of the Acts of Congress or any orders or findings of the Interstate Commerce Commission.
"During the year 1919, when the first order of the Interstate Commerce Commission was entered prescribing a Uniform Bill of Lading (52 I.C.C. 671), the pertinent provision of the Interstate Commerce Act (49 U.S.C. § 1 et seq. [49 U.S.C.A. § 1 et seq.]) read as follows:
" 'Provided further, That it shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: Provided, However, That if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery.' [49 U.S.C.A. § 20 (11)].
"However, on April 23, 1930, this provision of the Interstate Commerce Act was changed by Congress to read as follows:
" 'Provided further, That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice.'
"The proviso of the former act prohibiting the requirement of notice of claim and filing of claim as a condition precedent to recovery in cases where the loss, damage or injury complained of was due to carelessness or negligence was deleted from the statute.
[1] "As the terms of Section 2 (b), as written in the bill of lading in the instant case and agreed upon by the parties as part of the contract of carriage, conform to the provisions of the Act of Congress in effect at the time the contract was made, and are not repugnant thereto, they are not illegal as violative of any prohibitory Act of Congress.
"The next question to be determined is whether they violate any order or ruling of the Interstate Commerce Commission.
"When the Interstate Commerce Commission made its first effort to prescribe the form and substance of the Uniform Domestic and Export Bills of Lading, (52 I.C.C. 671) the authority of the Commission was promptly challenged and the operation and enforcement of its order was enjoined by the U.S. District Court for the Southern District of New York (in the case of) Alaska SS Company v. United States (Interstate Commerce Commission Intervenor) 1919, 259 F. 713. The case was appealed to the United States Supreme Court, 253 U.S. 113, 40 S.Ct. 448, 449, 64 L.Ed. 808, and pending the appeal Congress amended the Transportation Act. In holding that this amendment rendered the cause a moot one, the United States Supreme Court said:
" 'The subsequent legislation necessitates the adoption of different forms of bills in the event that the power of the Commission be sustained. This legislation having that effect renders the case moot. * * *
" 'In our view the proper course is to reverse the order, and remand the cause to the court below with directions to dismiss the petition, without costs to either party, and without prejudice to the rights of the complainants to assail in the future any order of the Commission prescribing bills of lading after the enactment of the new legislation.' United States v. Alaska SS Company, 1920, 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808.
"After the rendition of this decision, the Interstate Commerce Commission entered a formal order on November 27, 1920, reopening its cause No. 4844 for further hearing with respect to the form and substance of the proposed Uniform Domestic Bill of Lading, as will appear by certified copy of the *Page 542 
order attached to the stipulation in this cause, and from the report of the Interstate Commerce Commission in 64 I.C.C. 357.
"Although in its pleadings plaintiff contends that the original order of the Interstate Commerce Commission as reported in 52 I.C.C. 671 was still in full force and effect at the time the contract was executed in the instant case, plaintiff has since abandoned that contention in view of the production at the trial of the exception of the foregoing certified copy of the order of the Commission reopening the cause and setting aside its former order. Plaintiff now relies exclusively upon the decision of the Interstate Commerce Commission in Cause No. 4844 on October 21, 1921, as reported in 64 I.C.C. 357, and in the Code of Federal Regulations. Plaintiff particularly relies upon the following language in that decision:
" 'We are of opinion, in view of the changes in the Interstate Commerce Act made on February 28, 1920, and in the light of the entire record as supplemented at the recent hearing, that the bill of lading prescribed by us should be modified to read as shown in Appendix D hereto. We are of opinion and find that the rules and regulations contained in the Domestic Bills of Lading used by the carriers respondent hereto will be unreasonable for the future insofar as they differ from the rules and regulations made by us prescribing the Uniform Bill of Lading, appearing as Appendix D hereto, which we find will be reasonable for the future.'
"Plaintiff argues that this 'finding' is binding not only upon the carriers respondent thereto, but also upon the defendant railroad in this cause although it was not a party thereto, and upon this court, in spite of the subsequent amendment to the Transportation Act adopted by Congress on April 23, 1930, and in spite of the fact that the Secretary of the Interstate Commerce Commission has certified, under seal of the Commission, that the new form of Section 2 (b) of the bill of lading was filed with the Commission by the respondent and other railroads in conformity with the provisions of the said amendment of April 23, 1930, (and) became effective August 1, 1930, and was in full force and effect on the date the contract in the instant cause was executed.
"But an examination of the decision of the Commission in 64 I.C.C. 357 shows that the opinion and finding of the Commission was limited to 'the carriers respondent hereto.' In its general conclusion the Commission expressed an opinion 'as to what will be reasonable rules and regulations for the future', but made no finding as to what would be unreasonable for the future. In this conclusion the Commission states:
" 'We have thus outlined the matters presented to us in connection with our consideration of the domestic bill of lading and live stock contract. Our conclusions as to what will be reasonable rules and regulations for the future appear in Appendixes D and F * * *'
" '* * * No order will be entered. In case of failure on the part of any carrier or carriers to publish and put into force and effect the rules and regulations contained in the forms of Domestic Bill of Lading and Livestock Contract herein found reasonable for the future, any person aggrieved thereby has, of course, the right to file a complaint as provided in the Interstate Commerce Act attacking the particular rule or regulation which is deemed to be in violation of the Act.'
"An examination of the subsequent opinions of the Commission in Cause No. 4844 fails to reveal the issuance of any order affecting the present controversy. Matter of Bills of Lading, 66 I.C.C. 63; 167 I.C.C. 214; 172 I.C.C. 362; 245 I.C.C. 527.
[2, 3] "After the adoption of the amendments to the Transportation Act in 1927 and 1930, the respondent, which is governed by Consolidated Freight Classification No. 15, together with other carriers, filed with the Commission their amendments to the Domestic Bill of Lading 'for the purpose principally of making changes necessitated by the amendment of March 4, 1927, to Section 3 (2) of the Interstate Commerce Act relating to transportation charges and by the amendment of April 23, 1930, to Section 20 (11) of the Interstate Commerce Act relating to claims and suits'. The changes were to become effective August 1, 1930. The *Page 543 
Commission thereupon gave notice to all interested parties in accordance with its rules of practice. Since no objections or complaints were filed against the proposed changes, and since the Commission itself did not suspend the effective date, or on its own motion order a hearing and deny the relief sought, the changes became effective August 1, 1930; and the Secretary of the Commission has so certified in the documents annexed to and made part of the exception.
"Although no reference is made to these changes in the reports of the Interstate Commerce Commission or in the Code of Federal Regulations, they must, nevertheless, be given full effect. Orders which are rendered by courts of justice in legal controversies before them but which do not appear in any of the reported decisions of the courts, are nevertheless just as effective as those which do appear in such reports.
[4] "Proceedings before the Interstate Commerce Commission may be initiated by the filing of complaints under Section 13 of the Transportation Act, or on the initiative of the Commission under Section 15 (1) of the Act, or on the initiative of the carriers under Section 15 (7). Under Section 6 (9), carriers are required under penalty of rejection to state the effective date of any schedules filed with the Commission, and under Section 15 (7) such schedules, whether they relate to rates, charges, classifications,regulations or practices, become operative on the effective date unless suspended by the Commission, and when so suspended, at the end of such period of suspension. Algoma Coal Coke Co. et al. v. United States et al., D.C., 11 F. Supp. 487; Railway Express Agency, Inc. v. Michelson, 311 Mass. 704,42 N.E.2d 805; Board of Railroad Commissioners of State of North Dakota v. Great Northern Railway Co., 1930, 281 U.S. 412, 429, 74 L.Ed. 936, 944, 50 S.Ct. 391.
[5] "In the instant case, after the schedule containing the new regulations was filed with the Commission, no complaints were filed, no hearing was held, no order of suspension was issued, and under the plain provisions of the law the proposed changes, which were made in order that the new form might comply with the amendments to the Act of Congress of April 23, 1930, became effective August 1, 1930.
"In spite of the plain provisions of Section 15 (7) of the Transportation Act, plaintiff argues that the filing of a form of tariff with the Interstate Commerce Commission is of no effect. In support of this contention, reference is made to the case of Boston Main Railroad v. Piper, 1918, 246 U.S. 439, 38 S.Ct. 354, 355, 62 L.Ed. 820, Ann. Cas.1918E, 469, from which the following statement is extracted:
" 'While the provision was in the bill of lading, the form of which was filed with the railroad company's tariffs with the Interstate Commerce Commission, it gains nothing from that fact. The legal conditions and limitations in the carrier's bill of lading duly filed with the Commission are binding until changed by that body * * * but not so of conditions and limitations which are, as is this one, illegal, and consequently void.'
"An examination of that case shows that it does not support plaintiff's position. The Supreme Court held that a stipulation in a bill of lading limiting liability from unusual delay and detention caused by the carrier's negligence contravenes the principle that the carrier may not exonerate itself from losses negligently caused by it, and that since such a provision is illegal and consequently void, it cannot be given validity by the filing of it with the Commission. Indeed, even the Commission's specific approval in such a case could not make it legal. But in the instant case the conditions are not illegal. On the contrary, they are in conformity with the amendment to the Transportation Act of April 23, 1930; and in the very case cited by plaintiff, it is said:
" 'The legal conditions and limitations in the carrier's bill of lading duly filed with the Commission are binding until changed by that body. Kansas [City] Southern R. Co. v. Carl, [1913,] 227 U.S. 639, 654.' 33 S.Ct. 391, 57 L.Ed. 683.
[6] "The so-called 'finding' of the Interstate Commerce Commission in 64 I.C.C. 357 with respect to the unreasonableness of *Page 544 
deviations from the form of Domestic Bill of Lading approved therein, does not affect the present controversy therefore, because (1) said 'finding' was made applicable only to the carriers respondent to said proceeding, (2) no order was entered affecting the respondent in this case, (3) the 'finding' was made prior to the adoption by Congress of the amendment to the Transportation Act of April 23, 1930, which subsequent legislation made necessary the adoption of new forms of bills of lading in those particulars affected by the amendment, and (4) the old form 2 (b) was superceded by the new form used in the instant case as of August 1, 1930, as a result of the filing of the new schedule in accordance with the provisions of the Transportation Act.
"Since the provisions of the contract in this case were not contrary to the provisions of any Act of Congress, or order of the Interstate Commerce Commission, but were in fact so written as to conform to the Act and to the schedules on file with the Commission, which became effective August 1, 1930, and which have since been continuously in effect, the only question remaining is whether they are contrary to public policy.
[7] "Such contracts have been uniformly held to be lawful, not contrary to public policy, and not forbidden by law, moral conduct and public order. Mente Co., Inc., v. Roane Sugars, Inc., 199 La. 686, 6 So.2d 731; John Bonura Co., Inc., v. Southern Pacific Company, 2 La. App. 4; St. Louis I. M. S. R. Co. v. Starbird, 1917, 243 U.S. 592, 37 S.Ct. 462, 61 L.Ed. 917; Georgia F. A. R. Co. v. Blish Milling Co., 1916,241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; Chesapeake Ohio Railway Company v. McLaughlin, 1916, 242 U.S. 142, 37 S.Ct. 40, 61 L.Ed. 207; The Queen of the Pacific, 1901, 180 U.S. 49, 21 S.Ct. 278, 45 L.Ed. 419.
[8, 9] "Since the plaintiff is bound by the provisions of its contract, its failure to allege that it gave notice within the required time is fatal to its suit. By the great weight of authority, including that of this State, the failure to give such notice, where the giving of such notice is made a condition precedent to recovery, not only destroys the remedy but extinguishes the right. Case note 17 L.R.A., N.S., page 641; John Bonura Co., Inc., v. Southern Pacific Co., 2 La. App. 4; Metropolitan Trust Co. of New York v. Toledo, St. L. K. R. Co., C.C. 107 F. 628; St. Louis S. F. Co. v. Phillips,17 Okla. 264, 87 P. 470; Chicago S.E. R. Co. v. Fifth National Bank, 26 Ind. App. 600, 59 N.E. 43; Anderson v. Lake Shore M. S. R. Co., 26 Ind. App. 196, 59 N.E. 396; Texas P. R. Co. v. Hamm, 2 Willson App. Civil Cases App., Tex., § 491, 346.
"The exception of no cause of action is well founded and must be sustained."
In addition to the contentions advanced in the lower court, appellee's counsel raised in this court the point that the shipment involved herein is a "foreign shipment" which is not subject to the Carmack and Cummins amendments, and further that the shipment involved is also an "import shipment" to which the October 21, 1921, findings of the Interstate Commerce Commission in respect to the sum and substance of the Uniform Domestic Bill of Lading can have no application. In view of our foregoing conclusion, we deem it unnecessary to pass on these contentions of counsel.
The judgment appealed from is affirmed.
Affirmed. *Page 545