## W. S. Sparr, trading as Sparr Fruit Company, Appellee, v. Southern Pacific Company, Appellant.

### Gen. No. 25,443.

1. COMMERCE, § 5*—*what governs interstate shipments.* In an action against a carrier for failure to carry goods safely where the shipments are in interstate commerce, the Interstate Commerce Act, with the decisions of the federal courts and the provisions of the contract, are controlling, irrespective of local law.

2. COMMERCE, § 3*—*what is effect of Interstate Commerce Act.* The provision of section 20 of the Interstate Commerce Act, that nothing in the act shall deprive the shipper "of any remedy or right of action, which he has under existing law," means the common law as declared by the federal courts.

3. CARRIERS, § 69*—*what is liability of carrier of goods.* Under the common law and under the statutes as construed by the federal courts, a common carrier of goods is liable not for negligence alone, but also as an insurer in all cases except where the damage is caused by the act of God, by the public enemy, by authority of law, by fault of the shipper, or by result of the inherent vice or natural infirmity of the goods shipped.

4. CARRIERS, § 138*—*what evidence is admissible to show injury to goods.* In an action against a carrier for damage to shipments of lemons delivered in a deteriorated condition, while negligence is not the gist of the action, evidence tending to show freedom from negligence, such as the route of shipment, its arrival in customary time, ventilation of cars and inspection of the shipment upon arrival by carrier's expert, is admissible as tending to show that the injury was due to the inherent condition of the fruit.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded. Opinion filed November 30, 1920.

JOHN A. SHEEAN, for appellant.

CHARLES A. BUTLER, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff sued in assumpsit, defendant, a common carrier, to recover damages on eight cars of lemons and oranges, delivered by plaintiff to defendant, at points in California, to be delivered at various eastern destinations. The shipments were made in the years 1914, 1915 and 1916.

The declaration, at the time of the trial, charged that defendant had defaulted in its promise to safely and securely carry and deliver the fruit at the respective destinations, and certain counts in it charged defendant with negligence as a warehouseman. The defendant filed pleas of the general issue, with notice that it would rely on the bills of lading and provisions of the Interstate Commerce Act, as amended.

The evidence showed that the shipments moved under uniform bills of lading, material provisions of which were as follows:

"No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner, or for differences in the weights of grain, seed or other commodities caused by the natural shrinkage or discrepancies in elevator weights. For loss, damage or delay, caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only. Except in case of the negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession) the carrier or party in possession shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner or party entitled to

make such request; or resulting from a defect or vice in the property or from riots or strikes. When in accordance with general custom, on account of the nature of the property, or when at the request of the shipper the property is transferred in open cars, the carrier or party in possession (except in case of loss or damage by fire, in which case the liability shall be the same as though the property had been carried in closed cars) shall be liable only for negligence, and the burden to prove freedom from such negligence shall be on the carrier or party in possession.''

The plaintiff proved that the fruit shipped was sorted and crated in California in a careful manner, that all bruised, damaged or decayed fruit was thrown away, and, generally, that the fruit when delivered to the defendant was in good condition. It was further proved that upon arrival at destination from 6 to 16¾ per cent thereof was found to be decayed and damaged. Some of the boxes were broken.

Plaintiff also proved by competent testimony the market value of the various shipments at the time and place of loading, and the market value of the same in their damaged condition at the points of destination, and claimed the difference, plus freight, as the measure of damages which he was entitled to recover. The defendant made motions for a directed verdict in its favor as to each count at the close of plaintiff's evidence, which were denied by the court, whereupon evidence was offered in behalf of defendant. Proof was received as to the routes and destinations of the respective shipments and the times at which each of them arrived at its destination and notice thereof given to the consignee. The defendant further offered to show by a stipulation that the cars used in the litigation were handled from the points of origin to destination within the usual and customary time for the handling of trains of the kind in question over the routes taken; further, the distances between certain railroad stations on the route and the hours of ar-

W. S. Sparr v. Southern Pacific Co., 220 Ill. App. 172.

rival and departure of the cars; the ventilation record of the car at such times; the temperatures as taken at the United States Government Reporting Stations at the time the respective cars were at or ·near said stations; that the cars in question were standard refrigerator cars and in apparent good order at the time the shipment in question moved.

Defendant also offered to show by one M. J. Ryan that he had had many years' experience in the shipments of perishable property, including California oranges and lemons arriving in carload lots; that he knew the diseases with which they were sometimes attacked; that he had made inspection of the certain consignments at the time of arrival of the same at destination; that he found a certain percentage of decay was in the form of blue mold, which ran uniformly throughout each box and throughout the different boxes in each of the cars, and that the condition of the fruit at destination was, in his opinion, due to over-ripeness; that fruit of this kind was of a perishable nature.

Defendant also offered to prove by one Enright that he had had many years of experience as an inspector of perishable property, such as lemons and oranges; that lemons and oranges were of a perishable nature; that there is a tendency of the fruit to deteriorate as soon as it is taken from the tree and has become matured, unless it is checked by some artificial process of handling, such as refrigeration.  The defendant also offered to prove through one, Carnes, chief clerk to the assistant superintendent of the Pacific Fruit Express Company, which owned the cars involved in this case, that he had, through his experience, become acquainted with the time usually made in handling fruit shipments from southern California to eastern destinations; that the cars in question moved between the points of origin and respective destinations in the usual and customary time of cars handled under the

same or similar circumstances, at or about the time at which these cars in question moved; that no charge, other than the regular freight rate, was made for cars shipped under ventilation from the point of origin to the different destinations at the times in question; that a car that was iced to capacity before loading' at Fillmore, California, took a certain refrigeration rate, in addition to the regular freight charge, and that where a particular car was loaded at Fillmore, California, before icing at the first regular icing station, in the manner in which the ice cars in this transaction were handled, the refrigeration charge was $7.50 less than the refrigeration charge would have been for the same car had it been iced before the load was placed in the car.

By the witness Richardson the defendant offered to prove the construction of the cars in question in which the fruit was transported.

All of this evidence was objected to by the plaintiff, and objections sustained by the court, and at the close of defendant's evidence, plaintiff moved the court in writing to exclude all the evidence and to instruct the jury to find the issues for the plaintiff, which motion was sustained by the court. A verdict was accordingly returned for plaintiff with damages for the full amount claimed, on which the court entered judgment.

It is, of course, conceded by all the parties that since the shipments were in interstate commerce, the Interstate Commerce Act, with the decisions of the federal courts and the provisions of the contract, are controlling and must determine the rights of the respective parties, irrespective of local law. *Adams Exp. Co. v. Croninger,* 226 U. S. 491; *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 262 Ill. 400. The provision of section 20 of that Act, that nothing in the Act shall deprive the shipper "of any remedy or right of action, which he has under existing law," means the common law as declared by the federal

courts. *John Lysaght, Ltd. v. Lehigh Val. Ry. Co.*, 254 Fed. 351; *Southern Ry. Co. v. Prescott*, 240 U. S. 639.

It is the contention of appellant that negligence is the gist of an action against a common carrier by a shipper for loss or damage to a perishable commodity which is delivered to a carrier at a point of origin in good condition and by the carrier delivered at its destination in a deteriorated condition, and appellant says that the action of the trial court was based on a misconstruction of the language of the United States Supreme Court in *St. Louis, I. M. & S. Ry. Co. v. Starbird*, 243 U. S. 597, to the effect that the "bill of lading contained the entire contract upon which the responsibilities of the parties rested." We agree with the contention of appellant that when the facts of that case are considered, the language cannot be properly so construed (*Southern Exp. Co. v. Byers*, 240 U. S. 614), and that the defenses of a common carrier are not necessarily limited to such as are named in the bill of lading. We do not understand, however, that appellee bases his argument on any such theory, but, on the contrary, contends that under the rule which obtained at common law, and which now obtains under the statutes as construed by the federal court, a common carrier of goods is liable, not for negligence alone, but also as an insurer in all cases except where the damage is caused, first, by the act of God, second, by the public enemy, third, by authority of law, fourth, by fault of the shipper, fifth, by result of the inherent vice or natural infirmity of the goods shipped.

Appellee also contends, and this seems to be the real point at issue, that when it has been proved, as here, that goods are delivered by a shipper in good condition at the point of origin to a common carrier, and the carrier delivers the goods at destination in a damaged condition, the burden of proof is then cast upon the carrier to show, if it can, that the injury was

due to one of the causes excepted and that, until such exception is first established, the negligence or care of the carrier is wholly immaterial, and evidence is not admissible for the purpose of showing due care on its part, and that this is especially true, where as here, the bill of lading acknowledges the receipt of the goods in apparent good order. *Texas & Pac. Ry. Co. v. Reiss,* 183 U. S. 621; 1 Hutchinson on Carriers (3rd Ed.), sec. 4; *Cau v. Texas & Pac. Ry. Co.,* 194 U. S. 427. In Hutchinson on Carriers, *supra,* the author says:

"But the question of negligence, when the purely common-law relation of common carrier to the goods exists, is ordinarily wholly foreign to the inquiry whether such a carrier is to be held liable for their loss or injury, and, as will hereafter be seen, evidence on his part of the most exact diligence will be wholly irrelevant and inadmissible   *   *.   *   ."

We think the authorities indicate negligence is not necessarily the gist of the action against the carrier on a declaration, which, as here, sets up a cause of action based only upon the breach of defendant's promise to carry safely. 10 Corpus Juris 107; *Cudahy Packing Co. v. Atchison, T. & S. F. Ry. Co.,* 193 Mo. App. 574; *John Lysaght, Ltd. v. Lehigh Val. Ry. Co., supra; Missouri, K. & T. Ry. Co. v. Harriman Bros.,* 227 U. S. 673; *Kansas City Southern Ry. Co. v. Carl,* 227 U. S. 639.

But while this is true, an examination of the cases shows that, as a matter of fact, most of them have turned on the question of whether the carrier was, in fact, negligent, and we think it will often be found to be true that evidence tending to show freedom from negligence will also be found material and relevant for the purpose of proving whether the damage was the result of an inherent vice or natural infirmity of the goods, or indeed whether there may not have been some fault of the shipper not apparent upon the examination of the goods presented for shipment.

In a certain sense all property is perishable in that it has a tendency to change the particular form in which it appears, and it is true that inanimate things, as well as animate ones, are subject to infirmities. The common carrier does not insure against these. He does not contract and the law does not impose upon him the obligation of delivering any given article of commerce in precisely the same condition in which it was received from the shipper.  It would be manifestly impossible for him to do this and, therefore, manifestly unjust for the law to require him to do it, unless some grave reason of public policy should require him to assume such a liability.

When loss or damage has occurred to the goods while in the carrier's possession it may arise from causes for which he is liable, or it may arise from those for which he is not liable.

We fail to see why the evidence, such as was here offered and excluded, was not admissible as tending to show that the injury to the fruit was the result of its own inherent tendencies.  We do not mean by this to hold that the evidence of experiments made by one Richardson on other shipments of fruit in no way connected with any of these was admissible.

For reasons stated in another opinion this day filed we hold that such evidence was properly excluded. Nor do we assume to pass on the sufficiency of the evidence as offered.  That question is not now before us.  We hold, however, it should have been submitted to a jury.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

BARNES, P. J., and GRIDLEY, J., concur.